**GREAT AMERICAN INSURANCE COMPANY**

v.

**HARTFORD INSURANCE COMPANY, Appellee; Professional Electric Products, Inc. et al., Appellants.**

[Cite as *Great Am. Ins. Co. v. Hartford Ins. Co.* (1993), 85 Ohio App.3d 815.]

Court of Appeals of Ohio,
Lake County.

No. 91–L–117.

Decided April 2, 1993.

*Henry A. Hentemann,* for appellants.

*Frederick P. Vergon, Jr.,* for appellee.

JOSEPH E. MAHONEY, Judge.

Defendants-appellants, Professional Electric Products, Inc. ("Pepco"), and John Borkey, Jr. ("Borkey"), appeal from the judgment of the trial court that third-party defendant-appellee, Hartford Insurance Company ("Hartford"), was not obligated under its insurance policy to defend appellants in a suit brought by one of appellants' former employees wherein the employee alleged causes of action based on intentional torts.

Appellants' former employee, Dennis Japel, filed a complaint against Pepco and later filed an amended complaint against Borkey, president of Pepco. The amended complaint alleged causes of action for age discrimination, extortion, intentional infliction of emotional distress and invasion of privacy.

Appellants made a demand upon Great American Insurance Company ("Great American") and Hartford Insurance Company to defend and indemnify them in the Japel lawsuit. Great American agreed to defend appellants in the Japel lawsuit but reserved its rights to litigate "coverage issues." The Japel lawsuit proceeded to trial before a jury, which returned a verdict for appellants. Thereafter, Great American filed an action against appellants and Hartford seeking a declaratory judgment regarding its obligations to defend appellants under its insurance policy. Subsequently, Great American dismissed Hartford from the action. Appellants then brought Hartford back by filing a third-party declaratory judgment action against it, alleging that Hartford had improperly refused to defend them in the Japel lawsuit and seeking a declaration of Hartford's obligations to provide coverage to appellants in that lawsuit.

On November 27, 1989, the trial court found that Great American had not owed coverage to appellants and had not had any duty to defend them in the Japel lawsuit. The court further found that Great American had been acting as a volunteer in defending appellants and, thus, did not have a right to recover attorneys fees it had incurred in the defense. The court dismissed the third-party complaint against Hartford as being moot. On appeal, this court held that the third-party complaint was not moot since the Japel case had not been concluded yet and was pending on appeal. Thus, the matter was reversed and remanded for a determination as to the third-party complaint.

On remand, the trial court found that Hartford's policy is a comprehensive general liability policy covering bodily injury and property damage and that Japel's alleged causes of action were based on intentional torts perpetrated by appellants and were not for bodily injury or property claims caused by the appellants' negligence. Citing *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 31 OBR 180, 509 N.E.2d 74, the trial court noted that, even if negligence had been alleged, an employee may not sue an employer for negligence, and it is against public policy for an insurer to provide a policy of insurance which covers intentional torts. The court found that the claims of Japel were based on intentional torts and, therefore, were not coverable under the policy. Thus, the court concluded that Hartford was not obligated to provide a defense for appellants or to reimburse them for the costs of their defense.

Appellants have filed a timely appeal and now present the following assignments of error:

"1. The trial court erred in finding that Appellants Pepco and Borkey were not entitled to coverage under third-party defendant appellee Hartford Insurance Company's policy of insurance.

"2. The trial court erred in finding that the claims asserted against appellants Pepco and Borkey which give rise to the instant lawsuit were intentional torts

and were not for bodily injury or property claims caused by the negligent acts of Defendants–Appellants herein.

"3. The trial court erred in holding that the claims brought against Pepco and Borkey were intentional torts and, therefore, it would be against public policy for the insurance company to defend those claims."

Initially, we note that appellants' brief does not comply with Loc.App.R. 10(C)(1) and (3) in that the argument is not set forth consistently with and as it relates to each assignment of error, and the assignments of error are not fully set forth in the body of the argument. Instead, without setting forth the specific assignments of error, appellants present two arguments: (1) that Hartford had a duty to defend them in the Japel lawsuit, and (2) that Hartford owes appellants reimbursement for their attorney fees and costs incurred in defending the Japel lawsuit and bringing the third-party complaint for declaratory judgment against Hartford in this matter.

The issue to be decided is whether Hartford had a duty to defend appellants under the applicable insurance policy.

Whether an insurer has a duty to defend is determined from the allegations in the complaint. Where the allegations of the complaint unequivocally bring the action within the policy coverage, the duty to defend may arise from the complaint alone. *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874. However, where the insurer's duty to defend is not clear from the pleadings, or the pleadings do not provide sufficient factual information to determine whether an insurer had a duty to defend but the allegations state a claim which is *potentially or arguably* within policy coverage, or where there is some doubt whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim. *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 180, 9 OBR 463, 465, 459 N.E.2d 555, 558. Thus, the duty to defend need not arise solely from the allegations in the complaint but may arise subsequent to the filing of the complaint. The rationale behind this rule is the advent of notice pleading. Under notice pleading as adopted by Ohio in the Ohio Rules of Civil Procedure, specifically Civ.R. 8(A) and (E) and Civ.R. 15(B), the duty to defend could attach at some later stage even though the complaint does not specifically establish the duty. *Id.* at 179, 9 OBR at 464–465, 459 N.E.2d at 557–558. Thus, the insurer's obligation to defend will continue until the claim is confined to a theory of recovery that the policy does not cover. *Id.*, citing *Solo Cup Co. v. Fed. Ins. Co.* (C.A.7, 1980), 619 F.2d 1178, 1185.

Therefore, we need to examine the insurance policy and the allegations made in the Japel lawsuit and determine whether those allegations state a claim which is

potentially or arguably within the policy coverage. The amended complaint alleged causes of action for age discrimination, extortion, intentional infliction of emotional distress and invasion of privacy.

The relevant policy provisions state:

"PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE

"(A) The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, *even if any of the allegations of the suit are groundless, false or fraudulent* * * *.

"(B) This insurance does not apply:

" * * *

"(3) *to personal injury* or advertising injury *arising out of* libel or slander or the publication or utterance of defamatory or disparaging material concerning any person or organization or goods, products or services, *or in violation of an individual's right of privacy, made by or at the direction of the insured with knowledge of the falsity thereof;*

" * * *

"(5) to personal injury arising out of discrimination or humiliation directly or indirectly related to the employment or prospective employment of any person or persons by any insured;

" * * *

" 'Personal injury' means injury arising out of one or more of the following offenses committed during the policy period:

"(1) false arrest, detention, imprisonment or malicious prosecution;

"(2) wrongful entry or eviction or other invasion of the right of private occupancy;

"(3) a publication or utterance

"(a) of a libel or slander or other defamatory or disparaging material, or

"(b) in violation of an individual's right of privacy;

" * * *

"(4) discrimination or humiliation not intentionally committed by or at the direction of the insured or any executive officer, director, stockholder, partner or member thereof, but only with respect to injury to the feelings or reputation of a natural person." (Emphasis added.)

Subsequent to the oral argument in this case, both parties filed supplemental authorities, which consisted of case law from other jurisdictions. These authorities construed the definition of the term "bodily injury" to determine whether it encompassed claims for emotional or mental injury. The jurisdictions are split on this issue.

The term "bodily injury" is not at issue in the case before us. The term at issue in the instant case is "personal injury," which is unambiguously defined to include the offenses of defamation and invasion of privacy.

It is well established that any ambiguity of the policy terms must be resolved in favor of the insured. *Thompson v. Preferred Risk Mut. Ins. Co.* (1987), 32 Ohio St.3d 340, 513 N.E.2d 733.

In *United States Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co.* (1986), 31 Ohio App.3d 270, 31 OBR 556, 511 N.E.2d 127, the court applied *Willoughby Hills* and held that an insurer had a duty to defend a complaint brought by former employees alleging defamation and invasion of privacy where the insurance policy provided coverage to the employer for employment-related claims of libel, slander and invasion of privacy, but excluded coverage for intentional violations of the law and offenses "related to discrimination or unfair employment practices by any protected person."[1]

In *Physicians Ins. Co. of Ohio v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906, the Supreme Court held at the syllabus:

"In order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended."

It is not sufficient to show merely that the act was intentional. *Id.* at 193, 569 N.E.2d at 910.

It is clear that the trial court never applied the test set forth in *Willoughby Hills* in determining Hartford's duty to defend, but relied on *Wedge Products,*

---

1. Both of the employees alleged that their reputations had been damaged. The complaint of one of the employees alleged that she had been intentionally and maliciously subjected to harassment and discriminatory treatment throughout her employment. The specific acts alleged included "false and defamatory remarks * * * concerning [the employee's] * * * morals and character, including such statements as she was a whore and a slut." The other employee alleged that she was called a "f____g jew broad."

*supra,* and the general public policy exclusion applicable to intentional torts. In light of *Swanson,* which was decided three months prior to the trial court's judgment herein, and *Willoughby Hills,* the court should have determined whether the allegations of discrimination, extortion, intentional infliction of emotional distress and invasion of privacy potentially or arguably state a claim within policy coverage and whether the insurer proved that the injuries stemming from the alleged intentional acts were intentional. Thus, it is not enough to classify the causes of action as intentional torts and conclude, as the court did, that the claims are against public policy and not covered by the insurance policy. *Swanson, supra.*

■■■ Without examining whether the insurer proved that the injuries stemming from all of the alleged intentional acts were intended and, therefore, excluded from coverage, we find that the invasion of privacy claim, at the very least, was potentially or arguably within coverage. The acts giving rise to the invasion of privacy claim occurred after Japel's employment was terminated and after Japel filed the discrimination claim with the Civil Rights Commission. The allegations stated that in three separate instances appellants threatened Japel with public exposure of his alleged sordid background unless he settled the legal actions filed against them. These threats included alleged extramarital affairs and sexual activities with a woman named Rita, "two girls in the bowling alleys," improper activities in the back room of the Perfect Match Restaurant in Mentor, Ohio, and embarrassing facts about Japel's athletic career which were obtained from the Ohio State University Athletic Department. The insurance policy provides coverage for invasion of privacy even if any of the allegations are groundless, false or fraudulent. Hartford's counsel conceded that the invasion of privacy claim is covered under the policy but argued that the invasion of privacy was indirectly related to Japel's employment and, therefore, is excluded from coverage under the following provision:

"(B) This insurance does not apply:

\* \* \*

(5) to personal injury arising out of discrimination or humiliation directly or indirectly related to the employment or prospective employment of any person or persons by any insured[.]"

We disagree. The invasion of privacy claim may not arise out of "discrimination or humiliation" directly or indirectly related to Japel's employment but may be found to arise out of threats made subsequent to Japel's employment or may be found to be without discriminatory intent. Thus, applying *Willoughby Hills,* we conclude, just as the court in *St. Paul* did, that the complaint alleged a claim which "potentially or arguably" fell under the coverage provided by Hartford.

Whether the invasion of privacy claim had merit and could ultimately be proven was not the issue at this stage. Therefore, Hartford had a duty to appear and defend against the action until the claim was confined to a theory of recovery that the policy did not cover.

Since Hartford owed a duty to defend appellants, Hartford owes appellants reimbursement for their attorney's fees and costs incurred in defending the Japel lawsuit.

Appellants' assignments of error are well taken, and the matter is reversed and remanded to the trial court for determination of the costs and attorney fees owed to appellants.

*Judgment reversed*
*and cause remanded.*

BASINGER, J., concurs.

FORD, P.J., dissents.

RANDALL L. BASINGER, J., of the Putnam County Court of Common Pleas, sitting by assignment.

FORD, Presiding Judge, dissenting.

I dissent from the majority opinion.

First, exclusion three removes from coverage violations of an individual's right of privacy. The majority's reliance on *Swanson* to conclude otherwise appears to be misplaced. The *Swanson* court's conclusion "[i]n order to avoid coverage on the basis of an exclusion for expected or unintentional injuries, the insurer must demonstrate that the injury itself was expected or intended" was decided in a context employing vastly different exclusionary language.

In *Swanson*, the policies excluded only intentional or expected injuries. *Id.*, 58 Ohio St.3d at 193, 569 N.E.2d 910. The language in our case is broader, and excludes from coverage all violations of privacy whether or not intentional.

Similarly, the majority relies on *St. Paul Fire & Marine* for its view that appellee has to defend on the invasion of privacy claim. The *St. Paul* court concluded that the policy it was interpreting provided coverage for employment-related claims for invasion of privacy. Again, in our case the exclusionary language removes from coverage not only non-employment-related invasions, but, rather, all invasions.

Clearly, by its very nature, the age discrimination claim was directly or indirectly related to Japel's employment. Therefore, exclusion five is applicable and removes that claim from coverage.

Last, regarding the claims of extortion and intentional infliction of emotional distress, the majority states that the trial court erred in blanketly excluding such claims. The majority then implies that there may be no duty to defend on such claims if the insurance company proved that the injuries were intended; however, the majority does not feel the need to examine or remand on this issue because "at the very least" the privacy claim was covered. As previously stated, I disagree with its conclusion on the invasion of privacy claim, but assuming, *arguendo*, that the majority is correct, its analysis is still lacking.

In *Sanborn Plastics Corp. v. St. Paul Fire & Marine Ins. Co.* (1993), 84 Ohio App.3d 302, 616 N.E.2d 988, we quoted *Preferred Mut. Ins. Co. v. Thompson* (1986), 23 Ohio St.3d 78, 80, 23 OBR 208, 209–210, 491 N.E.2d 688, 690, which said:

" 'When a complaint against an insured states both negligence and intentional tort claims that are based upon the *same occurrence*, the insurance company that is contractually obligated to defend the insured in negligence actions is required to make a defense as to both claims against the insured, regardless of the ultimate outcome of the action or the insurance company's ultimate liability to the insured.' (Emphasis added.) * * *."

We continued, "From this holding, it follows that if the claims arise from separate occurrences, the insurer is only obligated to defend the claim that is covered under the policy." *Id.*, 84 Ohio App.3d at 313, 616 N.E.2d at 996.

The majority does not analyze whether the claims of extortion and intentional infliction of emotional distress arose from the same occurrence as the invasion of privacy claim. Accordingly, it does not demonstrate whether its conclusion on the privacy claim is sufficient to require a duty to defend on the other claims advanced.