HELMAN, Appellant,

v.

HARTFORD FIRE INSURANCE COMPANY, Appellee.

[Cite as *Helman v. Hartford Fire Ins. Co.* (1995), 105 Ohio App.3d 617.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 16984.

Decided Aug. 9, 1995.

*Brouse & McDowell, Linda B. Kersker* and *Timothy J. Horner,* for appellant.

*Buckingham, Doolittle & Burroughs, Donald A. Powell* and *Hamilton DeSaussure, Jr.; Louis G. Adolfsen,* for appellee.

———

REECE, Judge.

Appellant, Earl Helman, appeals from the trial court's entry of summary judgment finding that the appellee, Hartford Fire Insurance Company ("Hartford"), was not obligated to indemnify Helman for legal fees and costs, pursuant to the terms of an excess indemnity policy, because Helman had failed to timely notify Hartford of the underlying litigation. We affirm.

On February 8, 1989, Polysar, Inc. sued Helman in the United States District Court for the Northern District of Ohio. Polysar sought contribution from Helman for environmental response costs for which Polysar had become liable under the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), Section 9601 *et seq.,* Title 42 U.S.Code. When the federal CERCLA lawsuit was instituted by the EPA in 1987, Polysar owned a chemical manufacturing facility in Copley Township, Ohio. Prior to Polysar's ownership, the Copley facility had been owned by Helmstra (a partnership) from 1969 to 1974 and Helman (in his individual capacity) from 1974 to 1976. Helmstra and Helman each had leased the Copley facility to U.S. Industries, which had operated the facility during those years. In 1977, through a series of corporate transfers and a purchase option, Polysar became the owner and operator of the facility.

In 1972, a chemical spill occurred at the Copley facility. At the time of the spill, the Copley facility was operated as the E. Helman Division of U.S. Industries; Helman was the named president of that division and Helmstra was the lessor of the facility. The 1972 spill and other contamination at the Copley facility became the subject of the 1987 CERCLA lawsuit against Polysar. After entering into a consent decree with the EPA in which it assumed responsibility for environmental response costs at the Copley facility, Polysar sought contribution from all the individuals and organizations that had either owned or operated the facility during the 1970s. This group included Helman and Helmstra.

At the time of the 1972 spill, Helman was insured under personal Excess Indemnity Policies ("EIP policies") issued by the appellee Hartford. After being served with Polysar's contribution complaint in February 1989, Helman attempted to locate, but could not find, his copies of the seventeen-year-old EIP policies. On February 16, 1989, Helman telephoned the insurance agency, the Ostrov Corporation, which had procured the EIP policies for him in the early 1970s.

Helman told the agency he was involved in a lawsuit and asked the agency if it had retained copies of the EIP policies. Although the agency had not retained copies, it provided Helman with the policy numbers for the two relevant EIP policies. Helman did not forward the Polysar complaint to Ostrov or otherwise provide the agency with written notice of the Polysar lawsuit during these communications.

On March 9, 1989, Helman's counsel sent a letter to Hartford requesting that it provide copies of Helman's two EIP policies corresponding to the policy numbers provided by Ostrov. This letter did not mention the Polysar lawsuit or that a complaint had been filed against Helman. Hartford responded that it no longer possessed copies of Helman's EIP policies. Helman did not take any other action with regard to the EIP policies at this time. Instead, he had his own counsel defend him in the Polysar litigation.

The Polysar litigation proceeded through discovery in the U.S. District Court, and multiple motions and cross-motions for summary judgment were filed by the parties. On March 7, 1991, while the summary judgment motions were pending, Helman provided Hartford with written notice of the Polysar litigation. At the time Hartford received Helman's written notice, over two years had elapsed since the Polysar complaint had been filed against Helman in February 1989. On May 15, 1991, the U.S. District Court addressed the summary judgment motions in the Polysar litigation, and Helman's motions for summary judgment were denied. On July 12, 1991, the parties to the Polysar litigation settled all claims, and Helman was dismissed from the suit without having incurred any liability for contribution. According to Helman, however, he had incurred over $124,000 in legal fees and costs in defending the Polysar lawsuit.

In order to recover those fees and costs, Helman brought the present action against Hartford, claiming that it had a duty to defend him in the Polysar litigation. Both parties moved for summary judgment, and the trial court granted Hartford's motion. Helman appeals, asserting in his single assignment of error that the trial court erred in granting Hartford summary judgment.

█ In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard as the trial court under Civ.R. 56(C). *Varisco v. Varisco* (1993), 91 Ohio App.3d 542, 545, 632 N.E.2d 1341, 1342. That standard requires the court to view the evidence most strongly in favor of the nonmoving party and decide whether genuine issues of material fact remain for trial. *Id.* If, after undertaking this review, the evidence is such that reasonable minds could come to but one conclusion, and that conclusion is adverse to the nonmoving party, the moving party is entitled to judgment as a matter of law. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273.

■ The first issue is whether Helman has presented some evidence from which reasonable minds could find that a contract of insurance exists between the parties. Helman has never located his copies of the EIP policies. Hartford likewise has not located copies. Through discovery, though, Hartford has uncovered two specimen EIP policies from that time period. The two specimen policies contain standard terms and conditions that were included in each EIP policy. The specimen policies do not reflect any negotiations or modifications that may have been undertaken by Hartford and each prospective insured.

In his affidavit, Helman attests that he purchased standard form EIP policies from Hartford containing terms and conditions that had been neither negotiated nor modified. Saul Ostrov, an officer of the Ostrov Corporation when Helman's EIP policies were purchased, also attests by way of affidavit that Helman purchased standard form EIP policies from Hartford containing terms and conditions that had been neither negotiated nor modified. The trial court determined that Helman had presented some evidence from which reasonable minds could find that a contract of insurance exists between the parties. Therefore, as to the issue of the existence and the terms of the EIP policies, the trial court concluded that genuine issues of fact remained for trial.

Viewing the foregoing evidence in a light most favorable to Helman, we agree with the trial court that genuine issues of fact remain with regard to the existence and the terms of the EIP policies. As a result, we will presume, for the purpose of this appeal, that the two specimen policies attached to Helman's cross-motion for summary judgment represent the terms of the contract of insurance between the parties.[1]

The second issue raised by the parties concerns the timeliness of Helman's written notice to Hartford. The trial court found that Helman's two-year delay in notifying Hartford of the Polysar litigation was unreasonable as a matter of law. The trial court further found that Helman did not present sufficient evidence to rebut the legal presumption that Hartford was prejudiced by Helman's unreasonable delay. While we agree with the trial court's reasonableness determination, we differ slightly in our approach to the prejudice issue. The end result, however, is the same: Hartford is entitled to judgment as a matter of law.

The specimen EIP policy provides that "[i]f claim is made or suit is brought against the *insured* * * * the *insured* shall immediately notify [Hartford] in writing and forward to the underlying insurer or to [Hartford] every demand,

---

1. The two specimen EIP policies attached to Helman's cross-motion for summary judgment appear to be identical. When citing policy language, we will quote the terms contained in the specimen policy designated as "Form 6130." Our analysis, however, applies equally to the specimen policy designated as "Form 6118."

notice, summons or other process received by him or his representative." (Emphasis *sic.*) Helman did not notify Hartford *in writing* of the Polysar lawsuit until March 7, 1991, two years after the lawsuit was instituted.

A policy provision requiring prompt or immediate notice requires notice within a reasonable time in light of all the surrounding facts and circumstances. *Ruby v. Midwestern Indemn. Co.* (1988), 40 Ohio St.3d 159, 532 N.E.2d 730, paragraph one of the syllabus; *Heller v. Std. Acc. Ins. Co.* (1928), 118 Ohio St. 237, 160 N.E. 707, paragraph one of the syllabus. Helman contends that in light of all the facts and circumstances of the case, reasonable minds could find that "the timing and manner of the oral notice provided to the Hartford agent in 1989 and the formal notice provided to Hartford in 1991 were reasonable." We disagree.

As a general rule, if an insurance agent acting with apparent authority receives proper notice of claim during the scope of employment, the notice is considered to have been received by the insurance company. *Hartford Cas. Ins. Co. v. Easley* (1993), 90 Ohio App.3d 525, 531, 630 N.E.2d 6, 10. Helman provided only oral notice to Hartford's agent in February 1989. Helman did not forward the Polysar complaint to the agent or otherwise provide the agent with written notice of the lawsuit at that time. Because Helman failed to provide proper, *i.e.*, written, notice to Hartford's agent in 1989, reasonable minds could not conclude that Hartford received notice of the lawsuit in 1989.

Helman suggests, though, that his diligent but unsuccessful attempts to locate his EIP policies are a material fact for the jury to consider in assessing the reasonableness of his late notice. As a general rule, if an insured knows of potential coverage under a lost policy, the insured's delay in notifying the insurer will not be excused simply because the policy is lost. See *Olin Corp. v. Ins. Co. of N.Am.* (C.A.2, 1992), 966 F.2d 718, 724–725; *Miller v. Indian Lake Ins. Agency, Inc.* (Nov. 13, 1990), Logan App. No. 8–89–18, unreported, 1990 WL 178947. The record is clear that, from the onset of the Polysar litigation, Helman believed he was covered under the EIP policies. Because he believed he was covered under the EIP policies, Helman's two-year delay in notifying Hartford cannot be excused simply because his EIP policies were lost.

Helman claims, nevertheless, that Hartford was disingenuous by not providing him with the two specimen EIP policies in response to his counsel's March 1989 letter. Counsel's letter, however, did not specifically request that type of documentation or otherwise mention the Polysar lawsuit. As the insured, Helman has the burden of showing the existence of a valid contract of insurance between the parties. *Lynd v. Sandy & Beaver Valley Farmers Mut. Ins. Co.* (1957), 103 Ohio App. 408, 412, 3 O.O.2d 420, 422, 145 N.E.2d 453, 456. After

being informed by Hartford that it could not locate copies of his EIP policies, Helman had the burden to protect his rights under the alleged contract, even if that meant instituting legal action. Indeed, the present legal action, which uncovered the two specimen policies through discovery, could have been undertaken much earlier if Helman had acted with due diligence to protect his rights under the alleged contract. Instead of acting with due diligence, though, Helman waited over two years before taking any legal action to vindicate his contractual rights. In the absence of diligent conduct, Helman's delay cannot be excused. See, generally, *Heller,* 118 Ohio St. 237, 160 N.E. 707, paragraphs two and three of the syllabus; *Del Grosso v. Cas. Ins. Co.* (Ill.App.1988), 170 Ill.App.3d 1098, 120 Ill.Dec. 860, 862, 524 N.E.2d 1042, 1044. Consequently, we agree with the trial court that Helman's delay in notifying Hartford was unreasonable as a matter of law.

Once it is determined that an insured's delay in notifying his insurer is unreasonable, the insurer is presumed to have been prejudiced by that delay unless the insured presents some evidence to rebut the presumption. *Ruby,* 40 Ohio St.3d at 161, 532 N.E.2d at 732. When the insured presents some evidence to rebut the presumption, the issue of prejudice is not "one which can readily be determined in a summary judgment exercise." *Sanborn Plastics Corp. v. St. Paul Fire & Marine Ins. Co.* (1993), 84 Ohio App.3d 302, 308, 616 N.E.2d 988, 992. Nonetheless, even if the insured presents some evidence to rebut the *presumption* of prejudice, the insurer still may be entitled to summary judgment if reasonable minds could only conclude that the insurer suffered *actual* prejudice from the delay. See *Ruby,* 40 Ohio St.3d at 161, 532 N.E.2d at 732.

In this case, we do not need to determine whether Helman presented some evidence to rebut the presumption of prejudice. Rather, because reasonable minds could only conclude that Hartford suffered actual prejudice from the delay, Hartford is entitled to judgment as a matter of law.

In arguing that summary judgment was improper, Helman relies upon the decision in *Sanborn.* In *Sanborn,* the insured, Sanborn Plastics, did not notify its insurer, St. Paul, of the underlying litigation for nineteen months. In response to St. Paul's motion for summary judgment, Sanborn produced copies of the docket from the underlying litigation which showed that "very little occurred in furtherance of the litigation process during the nineteen-month delay." 84 Ohio App. at 308, 83 N.E.2d at 918. The Eleventh District Court of Appeals held that since Sanborn's evidentiary materials "tended to show that no action had occurred in the litigation which might have prejudiced [St. Paul's] position, [Sanborn] clearly met its burden of going forward with some evidence to rebut the presumption [of prejudice]." *Id.* at 308–309, 83 N.E.2d at 918.

Unlike the underlying litigation in *Sanborn* in which "very little" had occurred in furtherance of the litigation process during the delay, the underlying litigation in this case had proceeded to a critical juncture, the filing of multiple summary judgment motions, before Hartford was notified. Clearly, Hartford did not have a reasonable opportunity to participate in substantial parts of the underlying litigation. Specifically, Hartford was precluded from participating in the summary judgment motions and all of the discovery that preceded the motions. The question that remains is whether Hartford suffered actual prejudice by being precluded from these substantial aspects of the underlying litigation.

One of the purposes behind the notice requirement is to provide the insurer with a reasonable opportunity to determine if the allegations against its insured state a claim that is covered by the policy. Generally, an insurer must accept the defense of its insured if the allegations against the insured state a claim that is "potentially or arguably within the policy coverage." *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, syllabus; *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 585–586, 635 N.E.2d 19, 22–23. However, "[n]othing prevents the insurer, once the defense is accepted, from utilizing discovery to attempt to clarify the nature of the claim against the insured." *Willoughby Hills,* 9 Ohio St.3d at 180, 9 OBR at 466, 459 N.E.2d at 558, fn. 1. If, during discovery, the insurer uncovers facts which it believes, in good faith, absolve it of its duty to defend, the insurer may bring a declaratory judgment action to adjudicate its duty to defend, even if the underlying complaint alleges conduct within the coverage of the policy. See *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 112–113, 507 N.E.2d 1118, 1122–1123. Furthermore, even when the insurer has agreed to defend against allegations which are groundless, false, or fraudulent, the insurer may be absolved of its duty to defend if the facts uncovered during discovery demonstrate that there is no possibility of coverage under the policy. See *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 67–68, 31 OBR 180, 181–182, 509 N.E.2d 74, 75–76; *Willoughby Hills,* 9 Ohio St.3d at 179, 9 OBR at 464, 459 N.E.2d at 557.[2]

---

2. In this case, the specimen EIP policy, like the policy in *Willoughby Hills,* states that the insurer shall defend "even if any of the allegations of the suit are groundless, false or fraudulent." When considering this policy language in *Willoughby Hills,* the Supreme Court noted that "where there is doubt as to whether a theory of recovery within the policy coverage has been pleaded in the underlying complaint, the insurer must defend, and its defense obligations will continue *until such time as the claim against the insured is confined to a recovery that the policy does not cover.*" (Emphasis added.) 9 Ohio St.3d at 179, 9 OBR at 464, 459 N.E.2d at 557, quoting *Solo Cup Co. v. Fed. Ins. Co.* (C.A.7, 1980), 619 F.2d 1178, 1185. See, also, *Great Am. Ins. Co. v. Hartford Ins. Co.* (1993), 85 Ohio App.3d 815, 818 and 822, 621 N.E.2d 796, 798, and 801.

■ Hartford has consistently claimed that there is no possibility of coverage for Helman due to the "business pursuits" exclusion in the EIP policies. That exclusion states that Hartford will not provide coverage for personal injury or property damage "arising out of *business* pursuits of the *insured* or [arising out of] property at or from which a *business* or profession is conducted by the insured." (Emphasis *sic*.) "Business" is defined as "[a]ny gainful employment, trade, occupation or enterprise, other than farming." At the time of the 1972 chemical spill, the Copley facility was operated as the E. Helman Division of U.S. Industries; Helman was the president of that division and Helmstra was the lessor of the facility. Hartford has consistently claimed that any liability Helman may have had for environmental response costs at the Copley facility arose out his business pursuits with U.S. Industries and, therefore, would not have been covered pursuant to the business pursuits exclusion in the EIP polices.

Because the record contains some evidence to support Hartford's claim, we may presume that Hartford possesses a good faith belief in its business pursuits defense. By being precluded from discovery in the Polysar litigation, however, Hartford was prevented from using discovery to attempt to substantiate its good faith belief and, therefore, was prejudicially denied a reasonable opportunity to protect its interests. The prejudice to Hartford is particularly apparent since Helman's interests during discovery were in direct conflict with Hartford's. See *Imperial Cas. & Indemn. v. Buckeye Union Ins. Co.* (Apr. 9, 1990), Stark App. No. CA–7989, unreported, 1990 WL 41695.

According to the U.S. District Court's summary judgment order, Helman claimed two defenses to Polysar's demand for contribution. First, in response to Polysar's claim that he was liable for contribution as a former owner of the Copley facility, Helman contended that he had been an innocent owner during the contamination, completely unaware of U.S. Industries' activity at the facility. Helman relied upon *FMC Corp. v. N. Pump Co.* (D.Minn.1987), 668 F.Supp. 1285, to support his innocent owner defense. The decision in *FMC Corp.* permits a former owner who merely leased the contaminated facility to assert that he is not accountable for environmental response costs because he did not authorize or participate in the operator's waste disposal, was not involved in the operator's day-to-day operations or its financial affairs, and otherwise did not know that the operator was disposing of hazardous waste. *Id.* at 1292–1293.

In addition to claiming that Helman was liable for contribution as a former owner, Polysar claimed that, as president of the E. Helman Division of U.S. Industries, Helman was also liable for contribution as a former operator. At the time of the Polysar litigation, *Kelley v. ARCO Indus. Corp.* (W.D.Mich.1989), 723 F.Supp. 1214, set the standard in the Sixth Circuit for determining when a corporate officer could be held liable under CERCLA as an operator. But, see,

*Kelley v. Tiscornia* (W.D.Mich.1993), 827 F.Supp. 1315, 1324 (rejecting the *ARCO* standard). Under the *ARCO* standard, the court evaluates the officer's authority to control the company's waste-handling practices to determine if the officer is personally liable as an operator. The court specifically considers the officer's position in the corporate hierarchy, the distribution of power in the corporation, the percentage of shares owned by the officer, the officer's responsibilities for waste disposal management, and any instances of neglect in that management area. *ARCO*, 723 F.Supp. at 1219–1220. See, also, *Tiscornia*, 827 F.Supp. at 1324. In defense to Polysar's claim that he was a former operator, Helman contended that he had been a mere figurehead for the E. Helman Division of U.S. Industries and that the day-to-day management decisions at the Copley facility had been delegated to other officers and employees of U.S. Industries.

From the foregoing, we can easily discern what Helman's interests were during discovery. He sought evidence showing that he had not been actively engaged in the operation of the Copley facility, either as the owner of the facility or the president of the division. This evidence would also tend to show that he was not engaged in any business pursuits at the facility. If Hartford had been given an opportunity to participate in discovery, it would have sought evidence contrary to Helman's interests. Specifically, in order to invoke the business pursuits exclusion in the EIP policies, Hartford would have sought evidence to prove Helman was engaged in a business pursuit at the Copley facility. Because of this conflict of interests, Hartford may not have been the party that ultimately defended Helman in the Polysar litigation. See *Gill*, 30 Ohio St.3d at 112, 30 OBR at 427–428, 507 N.E.2d at 1122. Nevertheless, Hartford was entitled to a reasonable opportunity to decline the defense and to protect its own interests by either litigating its duty to indemnify and defend in a preliminary declaratory judgment action or intervening in the Polysar litigation as a third-party defendant. *Id.*; *Howell v. Richardson* (1989), 45 Ohio St.3d 365, 367, 544 N.E.2d 878, 880. Having been denied this opportunity to protect its own interests, Hartford was prejudiced by Helman's delay as a matter of law.

Finally, Helman cites this court's decision in *Downwyn Farms v. Ohio Ins. Guar. Assn.* (Apr. 17, 1991), Lorain App. Nos. 90CA004870/4872, unreported, 1991 WL 60688, as militating against a finding of prejudice. Not only is *Downwyn Farms* factually distinguishable, but that case effectively illustrates the scope of our holding in the present appeal.

In *Downwyn Farms*, the issue of prejudice was submitted to the trier of fact. The trier of fact concluded that Downwyn's insurer was not prejudiced by Downwyn's delayed notice. On appeal, Downwyn's insurer argued that the trier of fact erred in finding no prejudice. The insurer contended that if Downwyn had notified it of the underlying litigation earlier, it would have conducted its own

investigation of the underlying litigation differently than Downwyn. This court rejected the insurer's argument, finding that competent evidence supported the trier of fact's conclusion. In particular, this court noted that the insurer had not been prevented from "conducting its own investigation during the five months preceding the trial date." *Id.* at 8. In so noting, this court implicitly recognized that, despite the delay, the insurer had a reasonable opportunity to conduct an investigation and to take steps to protect its own interests during the pendency of the underlying litigation.

Unlike the evidence in *Downwyn Farms*, the evidence in the present appeal does not support the same conclusion. Rather, because Hartford was precluded from all discovery as a result of Helman's delayed notice, reasonable minds could only conclude that Hartford did not have a reasonable opportunity to protect its own interests during the pendency of the Polysar litigation. Consequently, Hartford was prejudiced as a matter of law. The assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, J., concurs.

BAIRD, P.J., dissents.

BAIRD, Presiding Judge, dissenting.

An insurance company which has agreed to defend groundless claims is not relieved of its obligation to defend merely because the discovery process has shown the claims to be groundless. Neither logic nor *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 31 OBR 180, 509 N.E.2d 74, compels such a circular result. If the allegations set forth a covered claim, I believe that an insurance company which has chosen to agree to defend groundless claims remains obligated to defend even if discovery has shown the claim to be groundless.

In view of my opinion that the majority misconstrues *Wedge Products*, I also differ with my colleagues' conclusion as to whether prejudice has been shown. Since the insured ultimately prevailed, and since the insurance company would have had to defend throughout, its only prejudice would have been the possibility that it could have achieved the same favorable result at less expense. Since there was no such evidence, I dissent.