[Cite as *Fireman's Fund Ins. Co. v. Hyster-Yale Group, Inc.*, 2019-Ohio-1522.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106937**

---

**FIREMAN'S FUND INSURANCE CO.**

PLAINTIFF-APPELLEE

vs.

**HYSTER-YALE GROUP, INC. ET AL.**

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-17-875690

**BEFORE:** Blackmon, P.J., Sheehan, J.,* and Headen, J.*

**RELEASED AND JOURNALIZED:** April 25, 2019

* Editor's Note: Judge Raymond C. Headen succeeded Judge Melody J. Stewart upon her resignation from the court, and Judge Michelle J. Sheehan succeeded Judge Tim McCormack upon his retirement from the court.

-i-

**ATTORNEYS FOR APPELLANTS**

**For Hyster-Yale Group, Inc., Yale Materials Handling Group, Hyster Corporation**

Amanda M. Leffler
Brouse McDowell, L.P.A.
388 South Main Street, Suite 500
Akron Ohio 44311

Alexandra V. Dattilo
Brouse McDowell, L.P.A
600 Superior Avenue, East, Suite 1600
Cleveland, Ohio 44114

Gabrielle Le Chavallier
Michael E. Farnell
Parsons, Farnell & Grein, L.L.P
1030 Southwest Morrison Street
Portland, Oregon 97205

**ATTORNEYS FOR APPELLEES**

**For Fireman's Fund Insurance Company**

Laura M. Faust
Moira H. Pietrowski
Roetzel & Andress Co., L.P.A.
222 South Main Street, Suite 400
Akron, Ohio 44308

Richard M. Garner
Collins, Roche, Utley and Garner, L.L.C.
655 Metro Place South, Suite 200
Dublin, Ohio 43017

**For Great American Insurance Company**

Michael C. Brink
Kevin M. Young
Tucker Ellis, L.L.P
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

Katherine Hance
Edward B. Parks, II
Shipman & Goodwin L.L.P.
1875 K Street, Suite 600
Washington, DC 20006

**For Travelers Indemnity Company**

Michael E. Smith
Franz Ward, L.L.P.
200 Public Square, Suite 3000
Cleveland, Ohio 44114

ON RECONSIDERATION[1]


PATRICIA ANN BLACKMON, P.J.:

{¶1} In this interlocutory appeal, defendants-appellants, Hyster-Yale Group, Inc., and its parent company, Hyster-Yale Materials Handling Corporation, (collectively referred to as "Hyster-Yale"), appeal from the order of the trial court determining that extrinsic evidence may be considered to determine whether plaintiff-appellee, Fireman's Fund Ins. Co. ("Fireman's Fund"), may withdraw its defense of Hyster-Yale in asbestos lawsuits where there is indisputable, reliable evidence that the date of injury clearly occurred outside of the policy term (i.e., 1957 to 1969). Hyster-Yale assigns the following three errors for our review:

> I. The trial court erred in holding that Ohio law permits [Fireman's Fund] to terminate its duty to defend based on information extrinsic to the operative complaints developed during the course of the underlying asbestos lawsuits.
>
> II. The trial court erred in holding that Oregon law permits [Fireman's Fund] to terminate its duty to defend based on information extrinsic to the operative complaints developed during the course of the underlying asbestos lawsuits.

---

[1]The original announcement of decision, *Fireman's Fund Ins. Co. v. Hyster-Yale Group., Inc.*, 8th Dist. Cuyahoga No. 106937, 2018-Ohio-5236, released December 20, 2018, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

III. To the extent Oregon and Ohio law conflict with respect to the standard governing an insurer's duty to defend, Oregon law has the most significant relationship to the policies and its law must therefore apply.

{¶2} Having reviewed the record and pertinent law, we affirm the judgment of the trial court granting partial summary judgment to Fireman's Fund and denying Hyster-Yale's motion for summary judgment. The apposite facts follow.

{¶3} Hyster-Yale Group is a national subsidiary of Hyster-Yale Materials Handling, a Delaware company. At all relevant times, Hyster-Yale manufactured "powered industrial trucks," or forklifts. Fireman's Fund is one of Hyster-Yale's insurers, and it issued various general liability policies with policy periods from February 1, 1957 through February 1, 1969. During this time period, Hyster-Yale was headquartered in Oregon, and the policies were negotiated with an Oregon broker.

{¶4} In relevant part, the Fireman's Fund policies state:

I. Coverage Bodily Injury Liability Automobile:

* * *

Coverage Bodily Injury Liability Except Automobiles: to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person and caused by accident;[2]

* * *

---

[2]Fireman's Fund subsequently issued endorsements substituting the term "occurrence" for "accident," but the parties agree that this change is not material to the instant dispute.

II. Defense Settlement Supplementary Payments: with respect to such insurance as is afforded by this policy, the company shall:

a) Defend any suit against the insured alleging such injury, sickness, disease or destruction in seeking damages on account thereof, *even if such suit is groundless, false or fraudulent*; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

IV. Policy Period, Territory, Purposes of Use: this policy applies only to accidents which *occurred during the policy period* within the United States of America, its territories or possessions[.] (Emphasis added.)

{¶5} The policies were not limited to the Oregon area, and by 1990, Hyster-Yale moved its headquarters to Ohio.

{¶6} Some of the component parts of Hyster-Yale's products are alleged to contain asbestos, and it is a defendant in various asbestos-injury actions. Hyster-Yale sought defense and indemnity from Fireman's Fund in connection with the policies in effect during the relevant time periods. In 2005, Hyster-Yale and Fireman's Fund subsequently entered into a "Claims Handling Agreement" to pay a portion of the cost to defend against each Hyster-related asbestos claim so long as the complaint potentially alleged exposure to asbestos before or during Fireman's Fund's policy periods.

{¶7} After entering into the 2005 agreement, Fireman's Fund gave notice that it was withdrawing from the defense of certain claims, maintaining that it had learned through

discovery that these claimants' asbestos exposure with regard to Hyster products occurred after the expiration of the last Fireman's Fund policy.[3]

{¶8} Fireman's Fund subsequently filed this declaratory judgment action against Hyster-Yale and its other insurers, Great American Insurance Company, and Travelers Indemnity Company. Fireman's Fund sought declarations: (1) that it has no duty to defend Hyster-Yale in asbestos lawsuits when there is "compelling evidence" that the plaintiff was not exposed to Hyster-Yale's products during the time periods of the Fireman's Fund insurance policies; (2) allocating defense costs in those asbestos lawsuits where the plaintiff's asbestos exposure occurred only during a portion of the duration of the Fireman's Fund insurance policies; and (3) allocating equitable contribution from other insurers. In its answer and counterclaim, Hyster-Yale maintained that the defense obligation applies even if the allegations of the plaintiff's complaint are "groundless, false, or fraudulent." Hyster-Yale sought a declaration that Fireman's Fund has a duty to defend and it also filed counterclaims for breach of contract and breach of Fireman's Fund's duty of good faith.

{¶9} Fireman's Fund filed a motion for partial summary judgment, arguing that Ohio law applies, but that under both Ohio law and Oregon law, there is no duty to defend where extrinsic

---

[3]By 2015, Fireman's Fund notified Hyster-Yale that it was withdrawing from the defense of claims filed by Robert Chamberland ("Chamberland") in California, Ruben Groskreutz ("Groskreutz") in Illinois, and Raymond Parker ("Parker") in Michigan ("the Chamberland, Groskreutz, and Parker claims.") Fireman's Fund maintained that it learned through discovery that Chamberland's asbestos exposure to Hyster-Yale forklifts began "no earlier than July 1978," or nine years past the 1969 policy period, Groskreutz's asbestos exposure began "[i]n the early 1990s," and Parker's exposure began in 1974. However, the record suggests that Fireman's Fund subsequently recommended continuing to fund a portion of the defense of these lawsuits under a reservation of rights.

evidence shows that alleged exposure occurred outside of the policy time periods. In opposition, Hyster-Yale argued that Oregon law applies to the dispute because the insurance was obtained in Oregon, and Hyster-Yale was headquartered in Oregon during the period that the policies were in effect. Hyster-Yale also argued that extrinsic evidence cannot be considered in determining the duty to defend, and that this issue is governed solely by the allegations of the complaint and the policy language requiring Fireman's Fund to provide a defense "even if such suit is groundless, false or fraudulent."

{¶10} The trial court held a hearing on the motion. Thereafter, on February 12, 2018, the trial court granted Fireman's Fund's motion for partial summary judgment on the duty to defend, stating:

I. Choice of Law

[T]he law of both [Ohio and Oregon provides that (1) an insurer's duty to defend will attach if the allegations in the underlying complaint fall under the policy's coverage and that (2) a court in certain, limited circumstances may look to extrinsic evidence outside of the complaint. As result, the Court need not engage in a choice of law analysis and shall apply Ohio law.

II. Contractual Interpretation

[T]he policy "applies only to accidents which occurred during the policy period."
* * *

[I]f exposure to asbestos in "groundless, false or fraudulent" suits temporally occurred in actuality between February 1, 1957 to February 1, 1969, then insurance coverage has been triggered and there is duty to defend. It logically follows in the alternative that if exposure to asbestos in "groundless, false or fraudulent" suits did not temporally occur in actuality between February 1, 1957 to February 1, 1969, then no insurance coverage has been triggered and thus there is no duty to defend. * * *

III. Duty to Defend

[I]t is proper to look at extrinsic evidence after a duty to defend has attached to determine whether that duty may be terminated when indisputable, reliable evidence establishes that insurance coverage has not been contractually triggered under policy's effective time period.  * * *

III.  Conclusion

[T]he Court accordingly declares that [Fireman's Fund] has the right to withdraw its duty to defend [Hyster-Yale] in asbestos lawsuits in cases in which there is indisputable, reliable evidence via sworn affidavit or sworn testimony that the date of an underlying asbestos injury clearly occurred outside of Plaintiff's effective policy term between February 1957 to February 1, 1969 * * *.

## Duty to Defend

**{¶11}**  Hyster-Yale's three assigned errors are interrelated and assert that this dispute is governed by Oregon law, not Ohio law, and that the duty to defend may not be terminated by application of extrinsic evidence obtained during discovery.  Rather, the duty is determined solely with reference to the policy language and the allegations of the injury set forth in the plaintiffs' complaints.  Because the policies require Fireman's Fund to defend even "groundless, false, and fraudulent" claims, and the complaints allege liability against Hyster-Yale, the duty to defend is "absolute."  Therefore, according to Hyster-Yale, the duty continues until the asbestos plaintiffs amend their complaints, or there are judicial determinations of the actual dates of asbestos exposure due to Hyster-Yale.  In opposition, Fireman's Fund maintains that

Hyster-Yale invited any error on the application of Ohio law to this dispute. It further argues that the trial court correctly applied Ohio law, but under the law of both Oregon and Ohio, the duty to defend may be terminated, following a declaratory judgment action, where extrinsic facts establish that a claim is not within policy coverage.

## Summary Judgment

{¶12} This court reviews a trial court's grant of summary judgment under the de novo standard. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Pursuant to Civ.R. 56(C), summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 1998-Ohio-389, 696 N.E.2d 201. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293,1996-Ohio-107, 662 N.E.2d 264.

## Does Ohio Law Conflict With Oregon Law?

{¶13} Before engaging in any choice of law analysis, a court must first determine whether such analysis is necessary. *McDonald v. Williamson*, 8th Dist. Cuyahoga. No. 81590, 2003-Ohio-6606, ¶ 7, citing *Akro-Plastics v. Drake Indus.*, 115 Ohio App.3d 221, 224, 685

N.E.2d 246 (11th Dist.1996). If the competing states would use the same rule of law or would otherwise reach the same result, there is no need to make a choice-of-law determination. *Id*. However, if Ohio insurance law conflicts with that of another state, a court must engage in a choice-of-law analysis. *See Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, paragraph one of the syllabus.

## Ohio Law

{¶14} In Ohio, the test of the duty of an insurance company to defend an action against an insured is "the scope of the allegations of the complaint in the action against the insured." *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 459 N.E.2d 555 (1984), syllabus. If the allegations on the face of the complaint state a claim arguably or potentially within the policy's coverage, then the insurer must accept the defense. *See Sanderson v. Ohio Edison Co.*, 69 Ohio St.3d 582, 589, 1994-Ohio-379, 635 N.E.2d 19, paragraph one of the syllabus; *Bay Mfg. Co. v. Cincinnati Ins. Co.*, 6th Dist. Erie No. E-92-22, 1993 Ohio App. LEXIS 589 (Feb. 5, 1993).

{¶15} The obligation to defend continues until the claim is confined to a theory of recovery not covered by the policy. *Great Am. Ins. Co. v. Hartford Ins. Co.*, 85 Ohio App.3d 815, 818, 621 N.E.2d 796 (11th Dist.1993).

{¶16} The duty to defend is further heightened when the insurer expressly states that it will defend claims that are groundless, false, or fraudulent. *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 13. However, the Ohio Supreme

Court has recognized that "[a]n insurer need not defend any action or any claims within the complaint when all the claims are clearly and indisputably outside of the contracted policy coverage." *Id.*; *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007- Ohio-4948, 874 N.E.2d 1155, ¶ 19.

{¶17} In *Willoughby Hills*, the policy at issue stated that the insurer's duty to defend exists "even if any of the allegations of the suit are groundless, false or fraudulent * * *." *Willoughby Hills*, 9 Ohio St.3d at 180  Significantly, the *Willoughby Hills* court noted that "[n]othing prevents the insurer, once the defense is accepted, from utilizing discovery to attempt to clarify the nature of the claim against the insured." *Willoughby Hills*, 9 Ohio St.3d at 180, fn. 1, citing *Ladner & Co., Inc. v. S. Guar. Ins. Co.*, 347 So.2d 100 (Ala. 1977). *Accord Helman v. Hartford Fire Ins. Co.*, 105 Ohio App.3d 617, 625, 664 N.E.2d 991 (9th Dist.1995).

{¶18} That is "even where an insurer has agreed to defend the insured against groundless, false, or fraudulent claims, the insurer does not have a duty to defend against claims that are clearly outside the scope of coverage under the insurance contract." *Westfield Natl. Ins. Co. v. Safe Auto Ins. Co.*, 10th Dist. Franklin No. 06AP-739, 2007-Ohio-2469, ¶ 14. In *Westfield*, Safe Auto attached to its motion for summary judgment a certified copy of appellant's driving record, and the court ruled that under the terms of the policy, "no coverage is afforded" if the covered auto is operated by a person without a valid driver's license. *Id*. at ¶ 4, 15.

{¶19}  In this matter, Fireman's Fund agreed to "[d]efend any suit against the insured alleging such injury * * *, *even if such suit is groundless, false or fraudulent*; but the company

may make such investigation, negotiation and settlement of any claim or suit[.]"  In addition, Fireman's Fund's policy "applies only to accidents which *occurred during the policy period*." Therefore, although Fireman's Fund agreed to defend even groundless, false, or fraudulent claims, after it accepted the defense on the basis of the allegations in the complaint, it could "utiliz[e] discovery to attempt to clarify the nature of the claim against the insured."  *Willoughby Hills*, 9 Ohio St.3d at 180, fn. 1.  Fireman's Fund's obligation to defend would continue until it is established that the claims are clearly outside the scope of coverage under the policy.  As concisely explained by the trial court, the duty to defend cannot be "extended without limitation because the clear terms of the policy dictate finite timeframe [sic] in which the insurance coverage may be triggered."  Therefore,

> [I]t is proper to look at extrinsic evidence after a duty to defend has attached to determine whether that duty may be terminated when indisputable, reliable evidence establishes that insurance coverage has not been contractually triggered under [the] policy's effective time period.

**{¶20}**  Hyster-Yale notes that in an analogous matter, *Panzica Constr. Co. v. Ohio Cas. Ins. Co.*, 8th Dist. Cuyahoga No. 69444, 1996 Ohio App. LEXIS 1975 (May 16, 1996), this court rejected an insurer's claim that it had no duty to defend because prior court proceedings established a date of "occurrence" that was prior to its insurance policy.  We find *Panzica* to be consistent with the present case.

**{¶21}** In *Panzica*, the Panzica Construction Company was covered by a comprehensive general liability insurance policy provided by Ohio Casualty Insurance from January 1975 through January 1977.  Relevant to the present case, Ohio Casualty had committed to defend

Panzica "even if any of the allegations of the suit are groundless, false or fraudulent * * *." In January 1977, the policy was modified to include a Broad Form Property Damage ("BFPD") endorsement that provided additional coverage. This 1977 policy remained in place through the end of 1980. After that, Panzica switched its insurance coverage to Commercial Union Insurance Company, and remained with Commercial Union until 1987. Panzica was sued in 1985 for property damage to certain Cleveland schools, but the complaints against Panzica did not allege dates of occurrences. Ohio Casualty refused to defend Panzica, asserting that the allegations in the complaints were not covered by their policies. Commercial Union provided Panzica with a defense pursuant to a reservation of rights and obtained a directed verdict in Panzica's favor on part of the claims, but withdrew its defense on the remaining claims after learning during discovery that the dates of occurrences were prior to the policy periods.

{¶22} In 1991, Panzica and Commercial Union sued Ohio Casualty for litigation defense costs, fees, and settlement monies, alleging that Ohio Casualty had a duty to defend Panzica in the Cleveland lawsuits. The trial court granted partial summary judgment to Panzica and Commercial Union finding that Ohio Casualty owed Panzica a duty to defend under the broader BFPD policies but not under the earlier policies that lacked the BFPD.

{¶23} On appeal, Ohio Casualty asserted that it properly refused to provide Panzica with a defense because court rulings in the school buildings cases established that the dates of the occurrences were either before or during the years where the earlier, pre-BFPD policies were in place. This court rejected Ohio Casualty's argument noting that "the duty to defend arises at the

inception of the lawsuit, not at its resolution" and "[b]ecause the complaints did allege claims which at least were arguably covered by appellant's policies, appellants owed Panzica a defense." *Panzica* at \*21. Therefore, the court reasoned, the "subsequent rulings in these cases do not determine whether [Ohio Casualty] owed Panzica a defense." *Id*.

{¶24}   In the present case, Hyster-Yale reasons that *Panzica* controls and precludes Fireman's Fund from withdrawing its defense based on facts learned in discovery about the relevant time periods of plaintiff's exposure to asbestos.  We disagree.  Hyster-Yale's reading of *Panzica* is misplaced.   In *Panzica*, Ohio Casualty never appeared to defend Panzica despite a clear duty to do so at the inception of the lawsuits based the allegations in the complaints. Although Ohio Casualty's duty to defend Panzica might have been terminated at the point in time during the underlying litigation where discovery revealed that the claims against Panzica were precluded from coverage because they occurred during the pre-BFPD policy periods, this did not justify Ohio Casualty's failure to initially appear and defend Panzica.  Ohio Casualty remained liable for defense costs associated with that period of time even though Panzica could have withdrawn at some point during the litigation when the occurrence dates were discovered.

{¶25} This point is further clarified in the analysis pertaining to the sixth assignment of error in *Panzica* where the court noted that Commercial Union, who did provide Panzica with a defense under a reservation of rights, was able to withdraw its defense "[b]ased on information discovered during litigation," and once "information was obtained showing dates of loss prior to its coverage period in the other cases." *See Panzica* at \*5 and 23.   The *Panzica* court found

Commercial Union's representation to be proper. *See Panzica* at \*23. This is consistent with the general rule permitting an insurer to proceed under a reservation of rights where coverage questions exists, then withdraw its defense after correctly determining that the claim falls outside of the policy. *See Efficient Lighting Sales Co. v. Neverman*, 8th Dist. Cuyahoga Nos. 91093 and 91122, 2009-Ohio-627, ¶ 27.

**{¶26}** In accordance with the foregoing, we hold that the trial court properly concluded that Ohio law permits Fireman's Fund to withdraw its defense of Hyster-Yale in asbestos lawsuits in cases in which there is indisputable, reliable evidence that the date of an underlying asbestos injury clearly occurred outside of the effective "policy period."

**{¶27}** The first assigned error lacks merit.

<u>**Oregon Law**</u>

**{¶28}** In *West Hills Dev. Co. v. Chartis Claims*, 360 Or. 650, 385 P.3d 1053 (2016), the Oregon Supreme Court set forth the law regarding an insurer's duty to defend as follows:

> An insurer's duty to defend, according to the widely accepted "four-corners" rule, is determined by comparing the complaint to the insurance policy. The rule refers to the four corners of the complaint; it also sometimes is referred to as the eight-corners rule (for the four corners of the complaint plus the four corners of the policy). However denominated, under that rule, one compares the allegations in the complaint to the insurance policy's terms. If the allegations in the complaint assert a claim covered by the policy, then the insurer has a duty to defend. If the allegations do not assert a claim covered by the policy, then the insurer has no duty to defend. *By limiting the analysis to the complaint and the insurance policy, the four-corners rule generally prevents consideration of extrinsic evidence*. (Emphasis added.)

*Id.* at 653.

**{¶29}** However, Oregon law permits the introduction of extrinsic evidence to determine "whether the party seeking coverage was actually an insured within the meaning of the policy." *See Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*, 237 Or. App. 468, 476, 240 P.3d 67 (2010); *PIH Beaverton L.L.C. v. Red Shield Ins. Co.*, 289 Or. App. 788, 799, 412 P.3d 234 (2018). Additionally, Oregon law permits an insurer to present evidence that as a matter of law there is no duty to defend claims for harms that did not occur within the policy period. *Higher Ed. v. NW Pac. Indemn. Co.,* 69 Or. App 456, 685 P.2d 1026 (1984).

**{¶30}** In accordance with the foregoing, we conclude that the trial court properly concluded that laws of Ohio and Oregon provide that "(1) an insurer's duty to defend will attach if the allegations in the underlying complaint fall under the policy coverage, and that (2) court in certain, limited circumstances may look to extrinsic evidence outside of the complaint."

**{¶31}** The second assigned error lacks merit.

## Choice of Law

**{¶32}** In its third assigned error, Hyster-Yale argues that the trial court erred in applying Ohio law, rather than Oregon law. Hyster-Yale notes that the insurance contracts were negotiated and obtained in Oregon, the location for Hyster-Yale's headquarters during the policy periods. In opposition, Fireman's Fund argues that Ohio is the present location of Hyster-Yale's headquarters. Fireman's Fund also asserts that any error on this issue was invited and not reversible because Hyster-Yale repeatedly stated that Ohio law and Oregon law are not in conflict.

**{¶33}** As we have concluded that the competing states would use the same rule of law permitting the use of extrinsic evidence to determine that as a matter of law, there is no duty to defend claims for harms that did not occur within the policy period, there is no need to make a choice-of-law determination because there is no conflict of law. *McDonald*, 2003-Ohio-6606, at ¶ 7; *Akro-Plastics*, 115 Ohio App.3d at 224, 685 N.E.2d 246. Therefore, the third assigned error is not well taken.

**{¶34}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
RAYMOND C. HEADEN, J., CONCUR