**PLASTICOLORS, INC., Appellee,**

v.

**CINCINNATI INSURANCE· COMPANY, Appellant.**

[Cite as *Plasticolors, Inc. v. Cincinnati Ins. Co.* (1992), 85 Ohio App.3d 547.]

Court of Appeals of Ohio,
Ashtabula County.

No. 91–A–1673.

Decided Dec. 14, 1992.

*Carl F. Muller* and *J. Adam Zangerle,* for appellee.

*David J. Fagnilli,* for appellant.

---

HENDRICKSON, Judge.

This appeal comes from the Ashtabula Court of Common Pleas. Appellant, Cincinnati Insurance Company, appeals from the trial court's order granting summary judgment in favor of appellee, Plasticolors, Inc.

The pertinent correspondence, as well as the insurance contracts between appellant and appellee were attached to the complaint and incorporated by reference in paragraphs one through six. Appellant admitted paragraphs one through six in its answer. Additionally, the affidavit of Bey Blanchard accompanied appellee's motion for summary judgment and it was unchallenged by appellant. Thus, the facts are determined either from the admitted portions of the complaint or the affidavit of Bey Blanchard.

Appellee was notified by the United States Environmental Protection Agency ("EPA") that appellee was a potentially responsible party ("PRP") for hazardous substances, pollutants and contaminants found on a site known as "Field Brooks." The EPA notified all parties who were responsible that if a settlement was not reached, negotiation would be terminated. The letter then encouraged all PRPs to join a three-member group and, as a group, to cleanup, or pay the cost of cleanup.

Appellee then wrote appellant requesting that it indemnify appellee for $30,000 which represented appellee's share as a de minimus participant in the predesign phase of the cleanup. Appellee stated: "We are not obligated to buy into this predesign phase, but if we do not, we subject ourselves to the Section 106, which also entitles the government to assess treble damages against any non-participating member." Additionally, the letter indicates that, as a de minimus participant in the predesign stage, appellee would have the option of buying into the cleanup phase at a rate of one half of a percent of the cleanup costs which would insulate appellee from any cost overruns. In addition to the predesign phase cost, appellee asked appellant to indemnify it for costs incurred in the cleanup phase.

Appellant responded to appellee's letter with a denial-of-coverage letter stating:

" * * * [Appellant] is of the opinion that clean-up costs incurred under CERCLA does [sic] not constitute 'property damage' as defined in the insurance contract. 'Property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

"A number of our courts have held that a claim for equitable relief for reimbursement of environmental clean-up expenses is not a claim for 'damages.' * * *

"We regret to advise that we will be unable to provide a defense or coverage for this claim. Please feel free to contact the writer if you have any questions on this matter."

Appellee then responded to appellant's denial letter, stating that it believed appellant's position denying coverage represents a minority view, and that appellee believed appellant had the duty to defend and indemnify for the CERCLA cleanup costs as they constitute property damage under the insurance policy.

Appellee then commenced this action for a declaratory judgment asking that the trial court (1) find that the claim of EPA against appellee constituted "property damage" as defined in the insuring agreement and that appellee's claim was within the scope of coverage; (2) determine the rights and obligations of the parties under the insuring agreement and that appellee's claim was within the scope of that agreement; (3) determine that appellant was liable to appellee for all costs and expenses incurred in defense of the claim by EPA and in the prosecution of the within action; and (4) determine that appellant is liable to appellee for any judgment resulting from the claim of EPA against appellee.

Both parties demanded summary judgment, but the trial court granted appellee's motion. This appeal followed.

Appellant's sole assignment of error asserts that "[t]he trial court erred to the prejudice of the defendant/appellant in granting the motion for summary judgment."

Appellant, in support of this assignment of error, raises the following issues: "(1) The party seeking indemnity under an insurance policy has the burden of proving that there is a covered claim under the policy; (2) the pollution exclusion clause is clear and unambiguous and should not be altered by the court to create coverage where none exists; (3) CERCLA (Comprehensive Environmental Response, Compensation, and Liability Act of 1980) costs are not damages within the meaning of an insurance policy; (4) CERCLA response costs are not property damages as defined by an insurance policy; (5) Waiver and estoppel are not viable to bring within coverage of an insurance policy's [sic] risk not covered by the policy terms or expressly excluded therefrom."

Appellee contends: "(1) That all defenses other than that set forth in appellant's February 9, 1989 letter denying coverage are waived and cannot be asserted by appellant or considered by this court; (2) That CERCLA response costs constitute damages or property damages as defined in a liability policy; (3) That the trial court properly construed the pollution exclusion by holding that the phrase 'sudden and accidental' meant 'sudden and unexpected'; and (4) That any contamination by appellee was by virtue of some unknown, unexpected and unintended activity and was as such covered by the policy."

The pollution exclusion contained in the policy reads as follows:

"This insurance does not apply: F. to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon land, the atmosphere, or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental[.]"

This exclusion is identical to the exclusion quoted in *Hybud Equip. Corp. v. Sphere Drake Ins. Co. Ltd.* (1992), 64 Ohio St.3d 657, 658, 597 N.E.2d 1096, 1097.

In that case, the Supreme Court determined that the definition of "sudden" meant that the exception to the exclusion covered only those damages caused by an abrupt release. *Id.* at 666, 597 N.E.2d at 1102.

Appellee's complaint does not allege that the discharge, if any, was sudden and accidental. Furthermore, none of the documents attached to appellee's motion for summary judgment states facts from which we could conclude that any discharge was sudden and accidental. Instead, Bey Blanchard, appellee's chairman and chief executive officer, merely stated that neither he, nor, to his knowledge, any employee of appellee was aware that appellee had released any contaminants into the environment.

Nevertheless, appellee contends in its brief in opposition to appellant's motion for leave to cite and rely on new controlling authority (*Hybud*), that "[t]he unrebutted evidence submitted to the trial court indicated that any alleged discharge was unintended and instantaneous."

Appellee then asserts that appellant must defend appellee and must indemnify appellee if it is determined in the CERCLA suit that appellee was a sudden and accidental polluter. Regardless of what may or may not be decided in some future action, we must decide this case on the evidence actually before us.

The only evidence before us as to the nature of the discharge is the affidavit of appellee's president and CEO. His denial of knowledge of the release of any contaminants doesn't even raise a question as to whether the discharge by appellee, if any, was sudden and accidental. After all, the burden is upon the appellee to establish that the exception to the pollution exclusion is applicable, but appellee has failed to do so.

If appellee's contention that appellant waived any defense not asserted in appellant's letter of February 9, 1989 to appellee had any merit, appellant could not now rely on the interpretation of the exception to the pollution exclusion in the policy as determined in *Hybud.* However, *Hybud,* also determined that "the doctrine of waiver cannot be employed to expand the coverage of a policy." *Id.* at 668, 597 N.E.2d at 1103.

Thus, the trial court failed to properly construe the pollution exclusion when it determined that "sudden and accidental" meant "sudden and unexpected" and there is no merit to appellee's claim of waiver by appellant of any defenses. Furthermore, all issues raised by either party which have not been specifically addressed are moot.

Therefore, there is merit to appellant's assignment of error.

*Judgment reversed.*

JOSEPH E. MAHONEY and EDWARD J. MAHONEY, JJ., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.

WILLIAM R. HENDRICKSON, J., retired, of the Twelfth Appellate District, sitting by assignment.