**U.S. INDUSTRIES, INC., Appellant,**

**v.**

**INSURANCE COMPANY OF NORTH AMERICA et al., Appellees.**

[Cite as *U.S. Industries, Inc. v. Ins. Co. of N. Am.* (1996), 110 Ohio App.3d 361.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17403.

Decided April 17, 1996.

362

*James E. Young* and *Larry Espel,* for appellant.

*James Barnhouse, Irene Sullivan, Arthur Fama, Jr., Stephen Harburg, John Altieri, Jr., Howard Walker, David Trainor* and *Evan Palik,* for appellees.

---

*Per Curiam.*

U.S. Industries, Inc. ("USI") appeals from the Summit County Court of Common Pleas' grant of partial summary judgment in favor of Insurance Company of North America ("INA"), American Motorists Insurance Company ("AMICO") and North Star Reinsurance Company ("North Star"), and its denial of USI's motion for partial summary judgment. We affirm.

In 1969, USI began manufacturing polystyrene resin at a facility in Copley, Ohio. Over the years, USI purchased general liability insurance coverage from a number of companies. From April 1, 1972 until April 1, 1976, USI was covered under a comprehensive policy issued by INA; from April 1, 1976 to July 8, 1976, USI was covered under a comprehensive policy issued by AMICO; and from

April 1, 1972 to April 1, 1973, USI was covered under an "umbrella" excess liability policy issued by North Star.

The comprehensive general liability policies issued by INA and AMICO were virtually identical. Under the provisions of their policies, INA and AMICO had agreed to pay on behalf of USI any sums that it would become legally obligated to pay as a result of property damage caused by an "occurrence." The two policies defined an occurrence as "an accident, including continuous or repeated exposure to conditions, which results in * * * property damage neither expected nor intended from the standpoint of the insured." These provisions also stated that INA and AMICO "shall have the right and duty to defend any suit against the insured seeking damages on account of such * * * property damage, even if any of the allegations of the suit are groundless, false or fraudulent * * *."

The two policies also listed a number of exclusions to the coverage, including a pollution exclusion. Neither INA nor AMICO covered property damage arising out of "the discharge, dispersal, release or escape of * * * pollutants into or upon land, the atmosphere or any watercourse or body of water." The pollution exclusion, however, was not applicable "if such discharge, dispersal, release or escape [was] sudden and accidental."

Unlike the policies issued by INA and AMICO, the North Star umbrella excess liability policy did not provide for a duty to defend. However, the North Star policy did provide that, under certain circumstances, North Star would indemnify USI for defense costs expended in connection with covered claims as part of its "ultimate net loss." The North Star policy also included a pollution exclusion that barred coverage for property damage arising out of the discharge, dispersal, release or escape of contaminants or pollutants unless the discharge, dispersal, release or escape was both "sudden and accidental."

In July 1976, USI sold the Copley manufacturing facility to Polysar, Inc. ("Polysar"). In May 1987, the Environmental Protection Agency ("EPA") filed suit against Polysar seeking relief for alleged environmental contamination at the Copley facility. In late 1988, the EPA agreed to drop its suit because Polysar had agreed to conduct a site investigation for hazardous materials and implement a cleanup plan.

Upon its investigation, Polysar discovered that significant quantities of hazardous substances had been stored, disposed of or released at the Copley facility prior to its acquisition of the facility. In February 1989, Polysar sued USI and the other prior owners and operators of the Copley facility in federal court. Polysar sought recovery of the money it had spent and would need to spend to clean up contamination at the Copley facility allegedly caused by USI's production of polystyrene there.

After filing the original complaint, Polysar discovered an earthen pit on the Copley site allegedly containing contaminated materials buried there by USI. Polysar then filed an amended complaint, detailing the events leading up to the burial of hazardous waste. Polysar alleged it would have to spend over $1.7 million to clean up the contamination caused by the burial of the hazardous material from an August 1972 tank rupture. USI and Polysar settled their claims in April 1991.

In February 1992, USI filed a declaratory judgment action in the Summit County Court of Common Pleas. USI sought a declaration of the obligations of INA, AMICO, and North Star under the general liability insurance policies they sold to USI regarding the defense and indemnity of USI as to the property damage claims of Polysar filed in the federal court case.

USI moved for partial summary judgment, claiming that under the terms of the insurance policies the three insurance companies were obligated to pay all the defense costs incurred by USI in the Polysar action. The insurance companies opposed the motion, and INA and AMICO moved for partial summary judgment, arguing they had no duty to defend or indemnify USI because coverage was excluded by the pollution exclusion clauses in the insurance policies.

On July 14, 1995, the trial court granted partial summary judgment in favor of INA, AMICO, and North Star, and denied USI's motion for partial summary judgment. The trial court found that the allegations in the Polysar complaint did not refer to a "sudden and accidental" event. Thus, the pollution exclusion found in each policy applied and none of the insurance companies had a duty to defend or indemnify USI. The court terminated the case and entered judgment in favor of the insurance companies. USI has filed a timely appeal and now presents the following assignments of error:

"1. The Common Pleas Court erred by granting summary judgment in favor of INA, AMICO and North Star and by dismissing USI's claims for defense and indemnity.

"2. The Common Pleas Court erred by refusing to enter partial summary judgment in favor of USI as against INA and AMICO with respect to the duty to defend."

Believing that the two claims are opposite sides of the same contention, we will treat these two as though they were one assignment of error. Thus, the issue to be decided is whether INA, AMICO, and North Star had a duty to defend and indemnify USI under the applicable insurance policies.

Initially, we note that there is an issue as to whether Ohio or New York law applies in this case. The parties, however, concede that we need not resolve this

issue at this time because the same result would be reached under either Ohio or New York law. We will therefore analyze this case under Ohio law.

In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. Pursuant to Civ.R. 56(C), summary judgment is proper if (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Whether an insurer has a duty to defend is determined by looking at the allegations in the complaint. *Great Am. Ins. Co. v. Hartford Ins. Co.* (1993), 85 Ohio App.3d 815, 818, 621 N.E.2d 796, 798–799. The duty to defend may arise from the complaint alone if the allegations in the complaint clearly bring the action within the coverage of the policy. See *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, paragraph two of the syllabus. However, when the duty to defend is not readily apparent from the pleadings, "but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, syllabus.

Therefore, we need to examine the insurance policies and the allegations made in Polysar's amended complaint and determine whether those allegations state a claim which is at least potentially or arguably within the policy coverage.

In its amended complaint, Polysar alleged that on August 31, 1972, "a tank located in the tank farm area of the Facility containing a mix product was ruptured. The mix, comprised primarily of styrene and ethylbenzene, saturated portions of the Facility and material escaped to an adjoining creek. A clean-up of the spill ensued." Polysar's amended complaint further alleged that "significant quantities of the contaminated material [were] buried by USI at the Facility." Polysar alleged that it located this burial area in 1989 and that it would require considerable expense to clean up the burial site. In later paragraphs, Polysar alleged that USI created other waste burial sites at the Copley facility prior to the sale of the facility to Polysar, but failed to disclose this fact.

The insurance companies argue that Polysar's damage claims in the underlying action are excluded from coverage by the pollution exclusion clauses

found in each insurance policy. USI, on the other hand, argues that because Polysar referred to a tank rupture in its amended complaint, the "sudden and accidental" exception to the pollution exclusion applies. The burden is upon the policyholder to establish that the exception to the pollution exclusion is applicable. *Plasticolors, Inc. v. Cincinnati Ins. Co.* (1992), 85 Ohio App.3d 547, 550, 620 N.E.2d 856, 858. After reviewing the amended complaint and all the applicable insurance policies, we conclude that USI failed to meet its burden.

As the trial court noted, Polysar's amended complaint did not allege that the resulting damages were caused by a sudden discharge, but rather by USI's actions following the rupture of August 31, 1972. Specifically, Polysar alleged that USI's burial of hazardous waste and its failure to disclose this fact prior to the sale of the Copley facility to Polysar resulted in a breach of contract, a breach of warranty, and misrepresentation, among other counts. The resulting environmental contamination was caused by a gradual release or discharge and dispersal of hazardous waste, not by a sudden and accidental event. These allegations accordingly brought the causes of action within the scope of the pollution exclusion clauses in the insurance policies. See *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 666, 597 N.E.2d 1096, 1102–1103.

Moreover, the "sudden and accidental" exception to the pollution exclusion clause was not invoked. This exception covers only those damages caused by an abrupt release. *Id.* at 667, 597 N.E.2d at 1103. Thus, the specific allegations of the Polysar complaint precluded coverage for the resulting damage. Under these circumstances, none of the insurance companies had a duty to defend or indemnify USI against the Polysar action.

Finding no error, we affirm.

*Judgment affirmed.*

BAIRD and REECE, JJ., concur.

QUILLIN, P.J., dissents.