OPINION
Plaintiff-appellant Owners Insurance Company appeals from the November 5, 1998, Judgment Entry of the Richland County Court of Common Pleas granting summary judgment in favor of defendant-appellee Baljit Singh dba Singh Enterprises.
 STATEMENT OF THE FACTS AND CASE
Appellee Baljit Singh dba Singh Enterprises is the insured under a Businessowners Insurance Policy (Policy No. 9323540500) issued by appellant Owners Insurance Company to appellee. Such policy provided business liability protection for a number of residential rental properties owned by appellee, including one property located at 116 Elmridge Road in Mansfield, Ohio. Whereas the effective date of the policy was August 25, 1996, the policy expired on August 25, 1997. Eric Holmes, as of February 14, 1997, was a tenant occupying an apartment at the Elmridge Road address. On November 17, 1997, Holmes filed a complaint against appellee in the Richland County Court of Common Pleas (case number 97-888-H) alleging that, on or about March 5, 1997, he "was overcome with carbon monoxide poison fumes from a faulty furnace at the apartment and that appellee knew or should have known that the furnace was not in working order." According to Holmes' complaint, appellee, prior to February 7, 1997, had been advised by gas company officials that he had faulty and/or nonfunctioning furnaces and furnaces at appellee's complex had been shut down by gas company inspectors because of malfunctions. Holmes, who alleged claims of negligence and bad faith against appellee, sought both compensatory damages and punitive damages from appellee. After investigating Holmes' claim, appellant initially agreed to provide a defense to appellee in the action filed by Eric Holmes under a reservation of rights since the Businessowners Policy of Insurance was in full force and effect on March 5, 1997, the date of the underlying incident. Thereafter, on March 11, 1998, appellant filed a complaint for declaratory relief against appellee seeking a determination as to whether or not it had a duty to provide a defense to appellee in the action filed by Holmes. Appellant, in its complaint, alleged that the damages and injuries claimed by Eric Holmes were excluded from coverage under the pollution exclusion endorsement contained in the policy issued by appellant to appellee, and that, appellant, therefore, had no duty to defend appellee. On September 3, 1998, appellee filed a Motion for Summary Judgment. Five days later, appellant filed a Motion for Summary Judgment. A Responsive Memorandum was filed by appellee on September 17, 1998. On October 2, 1998, appellant filed a response to appellee's Motion for Summary Judgment. With leave of court, appellee filed a second responsive memorandum on October 14, 1998. Pursuant to a Judgment Entry filed on November 5, 1998, the trial court granted summary judgment in favor of appellee, holding that "the Owners Insurance Company's business owners liability policy sold to him [appellee] does provide him coverage for any personal injury to Eric Holmes from carbon monoxide poisoning in his [Holmes'] residence about March 5, 1997." It is from the November 5, 1998, Judgment Entry that appellant prosecutes this appeal, raising the following assignments of error:
 I THE POLLUTION EXCLUSION CONTAINED IN THE INSURANCE CONTRACT CLEARLY AND UNAMBIGUOUSLY BARS COVERAGE FOR THE CLAIMS ASSERTED IN THE HOLMES ACTION.
 II THE TRIAL COURT ERRED IN THE INTERPRETATION AND APPLICATION OF THE POLICY'S "HOSTILE FIRE" EXCEPTION TO THE POLLUTION EXCLUSION.
An Amicus Curiae Brief has been filed by the Insurance Environmental Litigation Association (IELA) in support of appellant. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(c) states in pertinent part: Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421,429, citing Dresher v. Burt (1966), 75 Ohio St.3d 280. It is based upon this standard we review appellant's assignment of error.
 I
Appellant, in its first assignment of error, maintains that the pollution exclusion contained in the insurance policy issued by appellant to appellee clearly and unambiguously precludes coverage for the claims asserted against appellee in the action filed by Eric Holmes. We agree. The Pollution Exclusion Endorsement (No. 54656) attached to the policy issued by appellant to appellee excludes, in part, coverage for personal injury or bodily injury "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at or from premises you own, . . .". A pollutant is defined in the endorsement as meaning "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Since a policy of insurance is a contract between the insurer and the insured, rules of contract law are applied in interpreting and construing insurance policies. Gomolka v. State Auto Mut. Ins. Co. (1982), 70 Ohio St.2d 166. In interpreting the language of an insurance policy, the words and phrases contained in such policy are to be given their plain and ordinary meaning unless there is something in the contract that would indicate a contrary intention. Olmstead v. Lumbermans Mutl. Ins. Co. (1970), 22 Ohio St.2d 212, 216. If the language contained in an insurance policy is clear and unambiguous, courts cannot alter the provisions of the policy and may not stretch or constrain unambiguous provisions to reach a result not intended by the parties. Gomolka, supra at 168. However, since it is the insurance carrier who generally drafts the insurance policy, any ambiguous language in a policy is construed liberally in favor of the insured. American Financial Corp. v. Fireman's Fund Ins. Co. (1968), 15 Ohio St.2d 171, 173. We do not find the pollution exclusion contained in the policy issued by appellant to appellee to be ambiguous. Other courts, applying Ohio law, have held pollution exclusions nearly identical to or the same as the one in the case sub judice to be both clear and unambiguous. See for example, Zell v. Aetna Cas. Sur. Ins. Co. (1996), 114 Ohio App.3d 677, Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657 and W. Am. Ins. Co. v. Hopkins (Oct. 14, 1994), Clark App. No. CA 3108, unreported. Having found that the pollution exclusion in the case sub judice is both clear and unambiguous, the next issue for determination is whether the claims set forth in Eric Holmes' complaint against appellee fall within the language of the pollution exclusion contained in the subject insurance policy. Holmes, in his complaint against appellee, alleged that he was overcome by carbon monoxide fumes emanating from a malfunctioning furnace at an apartment owned by appellee. As is stated above, the policy between appellant and appellee precludes coverage for bodily injury arising out of the actual release of pollutants. Pollutants is defined in the policy as including "any gaseous . . . irritant or thermal contaminant", including smoke, vapor, fumes or chemicals. Because carbon monoxide vapors or fumes released from a malfunctioning gas furnace allegedly caused Holmes' bodily injury, we find that Holmes' claim against appellee clearly falls within the language of the pollution exclusion since carbon monoxide is a pollutant within the language of the policy exclusion. The pollution exclusion contained in the insurance contract issued by appellants to appellee clearly and unambiguously precluded coverage from the claims asserted against appellee in the action filed by Holmes. Thus, unless one of the exceptions to the pollution exclusion is applicable, the insurance policy between appellant and appellee does not provide coverage for Holmes' claims against appellee. Appellant's first assignment of error is sustained.
 II
In his second assignment of error appellant maintains that the trial court erred in its interpretation and application of the subject insurance policy's "hostile fire" exception to the pollution exclusion. We agree. The insurance policy issued by appellant to appellee contains the following language: "[The exclusion for release of pollutants at your premises does] not apply to "bodily injury", . . . caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be."
Appellee argued, and the trial court agreed, that the hostile fire exclusion encompasses Eric Holmes' alleged carbon monoxide injuries. A policy holder such as appellee bears the burden of proving an exception to a insurance exclusion. U.S. Indus. Inc. v. Ins. Co. of N. Am. (1996), 110 Ohio App.3d 361, 366. We find that appellee, as the policyholder in this case, has not met the burden of proving that the "hostile fire" exception to the pollution exclusion applies. In order for the "hostile fire" exception to apply, Holmes' bodily injury must have been caused by "heat, smoke or fumes from a hostile fire." The policy itself defines a "hostile fire" as one "which becomes uncontrollable or breaks out from where it was intended to be." Appellant maintains that the word "fire" encompasses all by-products of the combustion process, including carbon monoxide. According to appellee, there was a "hostile fire" in the case sub judice since the combustion gases, which appellee contends are as much a product of fire as heat and light, had broken out from the furnace, which is where they were intended to be. In other words, appellee argued that the flame portion of the fire need not be hostile for the exclusion to apply, but rather if any by-product from the combustion process were hostile, the exclusion would apply, even if the flame were not hostile. However, we do not concur. As IELA correctly notes, if the term "hostile fire" was interpreted as including the entire combustion process, then the language contained in the subject insurance policy covering all injuries resulting from "heat, smoke or fumes" from a hostile fire (emphasis added)" would be redundant. There is no dispute in this case that the carbon monoxide broke out from where it was intended to be. However, we find that that is not enough to put this scenario under the hostile fire exclusion. A remaining issue of material fact is whether the carbon monoxide fumes resulted from a hostile fire. Even if we were to find that a "flame going below and to [the] side of [the] burner" in a furnace is a hostile fire, we have no evidence that this flame was the cause of the presence of the carbon monoxide fumes. In Bernhardt v. Hartford Fire Ins. Co. (1994), 648 A.2d 1047, an insured landlord brought suit against a business liability insurer seeking coverage for liability to tenants who were injured by carbon monoxide leaking from a furnace. As in the case sub judice, the landlord argued that the hostile fire exception to the pollution exclusion applied since the damage was caused by fumes from a hostile fire. The Maryland Court of Special Appeals did find that there was no evidence that the fire in the furnace became "uncontrollable" or broke out from where it was intended to be. However, in addition, the Maryland Court addressed the issue of cause: "The cause of the release of carbon monoxide, as proffered by counsel for the landlord at the hearing. . . ., was the blockage of free air passage in the chimney flue, causing a buildup and dispersal of carbon monoxide throughout the building. The [hostile fire] exception to the [pollution] exclusion does not apply." Id, at 1049. Appellee, in support of his contention that the fire in the furnace broke away from where it was intended to be, points to a "shut off tag" that allegedly had been placed on the furnace by Columbia Gas on March 5, 1997. Such tag states: "Giving off CO [carbon monoxide] — 100 PPM at furnace 10 PPM is minimum — cracked or plugged heat exchanger — flame going below and to side of burner — no shutoff valve." The trial court, in its November 5, 1998, Entry, construed such tag as evidence "that the flames themselves were outside the area of the burner where they were intended to be." Not only is the tag hearsay under Evid.R. 801 and 802 (since it is a written assertion offered in evidence to prove the truth of the matter asserted, i.e. — that the furnace flame was going below and to the side of the burner), but there is no evidence that the release of carbon monoxide that allegedly injured Eric Holmes was caused by the flames going below and to the side of the burner. In the case sub judice, we cannot find, from the evidence available to the trial court, that the policy holder established that a hostile fire caused the harmful levels of carbon monoxide. The shut-off tag lists three problems with the furnace. The policyholder himself, who is an engineer acquainted with standards set for residential furnaces, lists, in his Affidavit, the five most common ways for carbon monoxide to escape from a furnace and accumulate in a house. A split in the heat exchanger is listed as number one (also listed first on the shut-off tag) but a flame going below and to [the] side of [the] burner is not on the list. In conclusion, we find that the existence of carbon monoxide in a place and in amounts inconsistent with a properly operating gas-fired furnace is not per se evidence that the carbon monoxide resulted from a hostile fire. The insurance policyholder must set forth some proof that a hostile fire caused the carbon monoxide fumes to be in a place and in amounts inconsistent with normal gas-fired furnace operation. Otherwise, the mere allegation of harmful amounts of carbon monoxide in a place heated by a gas-fired furnace would be enough to establish that the claim was potentially within the policy coverage. While we can understand appellee — Singh's frustration and disbelief regarding the limits of his insurance policy coverage, we sustain appellant's second assignment of error.
Since the trial court, therefore, erred in granting Summary Judgment in favor of appellee, the Judgment of the Richland County Court of Common Pleas is reversed and remanded for further proceedings consistent with this opinion.
Edwards, J. Wise, P.J. and Gwin, J. concur.