DECISION. *Page 2 
{¶ 1} In these appeals, plaintiff-appellant/cross-appellee, M M Metals International Inc., contests five separate rulings of the trial court: (1) the entry granting summary judgment to defendants-appellees/cross-appellants Continental Casualty Company, Transportation Insurance Company, and Great American Insurance Company on the effect of a pollution exclusion in various insurance policies; (2) the entry denying as moot M M's emergency motion to defer consideration of Great American's motion for summary judgment pursuant to Civ.R. 56(F); (3) the entry denying M M's motion to strike Continental Casualty Company and Transportation Insurance Company from Great American's motion for summary judgment; (4) the entry denying M M's cross-motion for partial summary judgment on regulatory estoppel; and (5) the entry denying as moot M M's motions to compel complete discovery responses.
 {¶ 2} Continental, Transportation, and Great American have filed a sole cross-assignment of error, in which they contend that if this court should determine that the judgment entered in their favor was inappropriate, the case should be remanded for further consideration of M M's cross-motion for summary judgment, along with the insurers' objections to the evidence submitted by M M in support of its motion.
 I. Factual and Procedural Background {¶ 3} M M is an Ohio corporation engaged in the business of scrap-metal processing and recycling. M M has sent scrap-metal materials to several third-party sites in Ohio, Pennsylvania, Alabama, and Illinois, some of which are now subject to environmental investigation and cleanup. *Page 3 
 {¶ 4} M M filed a complaint for breach of contract and a declaratory judgment against Continental, Transportation, and Great American for liabilities and cleanup costs associated with the sites. M M asserted that Continental and Transportation had issued primary and excess liability insurance policies from 1969 to 1985. M M sought excess insurance coverage from Great American under policies issued from 1980 to 1984. Each of Great American's policies contained the following "sudden and accidental" pollution exclusion:
 {¶ 5} "This policy does not apply:
 {¶ 6} "(g) to personal injury or property damage arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release, or escape is sudden and accidental."
 {¶ 7} M M conceded that all the policies issued to it or its predecessors after 1970 contained the pollution exclusion, including those issued by Continental and Transportation.
 {¶ 8} The parties engaged in extensive discovery over several months. During that time, M M produced evidence of payments at only two sites in Pennsylvania — Jack's Creek and Metcoa. M M assumed liability at Jack's Creek in a settlement with the United States Environmental Protection Agency that was based upon the volume of waste that M M had periodically shipped to that site between 1973 and 1976. The Jack's Creek site, consequently, was the only site where M M allegedly had liability in excess of $250,000, the triggering point of Great American's *Page 4 
excess coverage. M M also produced evidence that it had paid $9,500 to settle Metcoa liabilities for similar shipments after 1975.
 {¶ 9} Great American moved for summary judgment based upon the pollution exclusion. Continental and Transportation joined in the motion. M M filed a cross-motion for summary judgment seeking to void "the sudden and accidental" pollution exclusion upon which Great American had relied. Simultaneously, M M sought to defer consideration of the insurers' motion for summary judgment by requesting a Civ.R.56(F) continuance to take nonparty discovery, by filing two separate motions to compel first-party discovery, and by moving to strike Continental and Transportation from any proceedings for summary judgment.
 {¶ 10} The trial court denied M M's motion for a continuance, both motions to compel, and the motion to strike the joinder. The trial court then granted summary judgment in favor of Great American, Continental, and Transportation, and denied M M's cross-motion for summary judgment.
 II. Analysis {¶ 11} In its first assignment of error, M M contends that the trial court erred in granting Great American's motion for summary judgment and in denying as moot its emergency motion pursuant to Civ.R. 56(F).
 {¶ 12} Great American, Continental, and Transportation moved for summary judgment based upon the pollution exclusion in their policies. M M moved for a Civ.R.56(F) continuance to allow it to take additional discovery from nonparties to establish choice of law and an exception to the pollution exclusion, as well as from first parties, to determine whether document production was complete. *Page 5 
 {¶ 13} To obtain a Civ.R.56(F) continuance, M M Metals bore the burden to show that it could identify material facts essential to oppose summary judgment and to explain why the additional discovery was needed to establish those facts.[1] We note, however, that a trial court has no obligation to allow discovery that is immaterial to the matters placed at issue by a motion for summary judgment.[2] Likewise, a trial court has no obligation to allow additional discovery because existing discovery has left a party without any evidence to oppose summary judgment.[3]
 {¶ 14} M M first argues that the trial court erred by determining that Ohio law governed the interpretation of the insurance policies at issue without granting it a continuance to depose nonparty insurance brokers and underwriters. M M contends that the law of each state where it faced liability might have governed interpretation of the insurance contracts.
 {¶ 15} In deciding what state's law governs interpretation of an insurance contract, Ohio follows the five-factor test under the Restatement of the Law 2d, Conflict of Laws (1971) 575, Section 188, to determine which state has the "most significant relationship" to a dispute.[4] Among these factors are (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the *Page 6 
location of the subject matter of the contract, and (5) the domicile, residence, place of incorporation, and place of business of the parties.[5]
 {¶ 16} Having reviewed the record, we conclude that the trial court had more than enough evidence to make a choice-of-law determination and that its decision to apply Ohio law to the insurance policies was sound. Consequently, we hold M M's first issue to be meritless.
 {¶ 17} M M next argues that the trial court erred by denying it a continuance to take discovery from nonparties regarding contamination at all six sites, because such discovery was essential to show that its liability arose from "sudden and accidental" polluting events outside the scope of the pollution exclusion.
 {¶ 18} Based on the record before us, we cannot conclude that the trial court erred in denying this additional discovery for two main reasons. First, due to a 1999 amendment to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), scrap dealers like M M were provided with a prospective exemption applicable in any action filed after November 24, 1999, even if the action was based upon pre-1999 activity.[6] Thus, discovery concerning any sites except Jack's Creek and Metcoa would have been immaterial, as M M had failed to demonstrate any liability at these sites. Second, M M had settled its liability at Jack's Creek and Metcoa based on the volume of metal it had shipped to the sites over a period of years. Thus, M M had limited its liability to the pro rata share of waste it had contributed to each site. Thus, nonparty facts, unrelated to the time period when the materials had been shipped, could not have established a basis for *Page 7 
the insurers' liability, particularly where M M had never settled its liability based on such facts.[7] As a result, M M's second issue is meritless.
 {¶ 19} M M finally argues that the trial court erred by denying it a continuance to obtain lost policy discovery from Continental and Transportation. But as we explain in our analysis under the second assignment of error, this discovery was not relevant in light of M M's admission that all Continental and Transportation policies contained the "sudden and accidental" pollution exclusion. Consequently, we find this issue feckless.
 {¶ 20} In sum, we cannot conclude that the trial court erred in denying M M's motion for a continuance where a discovery record had been fully developed, and where M M had failed to demonstrate how the additional discovery would have been essential to defeat summary judgment.
 {¶ 21} We next address M M's argument that the trial court erred in granting summary judgment. When reviewing the grant or denial of a motion for summary judgment, this court employs the same standard used by the trial court. That is, we independently review the record to determine if summary judgment was appropriate.[8] Under Civ.R. 56(C), summary judgment is proper when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party."[9] *Page 8 
 {¶ 22} In Hybud Equip. Co. v. Sphere Drake Ins. Co., the Ohio Supreme Court held that a pollution-exclusion clause identical to the pollution exclusion at issue in this case was unambiguous, and that the exception for sudden and accidental discharges in the clause applied only to discharges that were temporally abrupt.[10] Thus, Great American, Continental, and Transportation bore an initial burden to show that M M had sought insurance coverage for environmental liabilities within the scope of the exclusion.[11] M M then bore its own burden to demonstrate that its liabilities arose from a "sudden and accidental" release of pollutants.[12]
 {¶ 23} M M does not dispute that it sought insurance coverage for liabilities within the scope of the pollution exclusion. Rather, it contends that it identified material facts essential to defeat summary judgment. The record of discovery in this case discloses that M M had settled pollution liabilities based upon the volume of waste metal it had periodically shipped to the Jack's Creek site from 1973 to 1976 and to the Metcoa site after 1975. A 1964 fire or a 1972 hurricane cited by M M could not have served as the basis of its liability because it did not ship metal to either site until 1973. Thus, these preshipment events were irrelevant to the obligations M M had undertaken in the Jack's Creek settlement. M M further suggests that periodic rainstorms and corresponding soil erosion could have led to "sudden and accidental" pollution. But, erosion is gradual by definition, and rain should have been expected as a matter of law.[13] *Page 9 
 {¶ 24} Because the record reveals that M M's liabilities arose from periodic waste shipments that were neither sudden nor accidental, the trial court properly granted summary judgment to Great American, Continental, and Transportation on M M's claims.[14] We, therefore, overrule M M's first assignment of error.
 {¶ 25} In its second assignment of error, M M argues that the trial court erred in denying its motion to strike Continental and Transportation from Great American's motion for summary judgment.
 {¶ 26} In reviewing the record, we cannot say that the trial court abused its discretion in denying M M's motion to strike, where M M itself affirmatively moved for summary judgment on the basis of the terms contained in the pollution exclusions. Where parties file cross-motions for summary judgment and the facts are not contested, Ohio courts decide the issues as a matter of law.[15] Here, since M M's cross-motion did not dispute that the policies issued by Continental and Transportation contained the pollution exclusion, it was within the trial court's discretion to consider the concessions made in M M's cross-motion with respect to the merits of its claims against Continental and Transportation. We, therefore, overrule M M's second assignment of error. *Page 10 
 {¶ 27} In its third assignment of error, M M argues that the trial court erred in denying its motion for partial summary judgment on regulatory estoppel. M M contends that the term "sudden" should have been construed to mean "unexpected" because the insurance industry represented to insurance regulators in 1970 that the intent of the pollution exclusion was to bar coverage for intentional pollution, not pollution that was accidental.
 {¶ 28} As Great American, Continental, and Transportation correctly note, following the Ohio Supreme Court's decision in Hybud, Ohio appellate courts have consistently construed the term "sudden" to bar coverage for gradual pollution.[16] By holding that the term "sudden" has a temporal component, Ohio courts have rejected the argument that extrinsic evidence is permitted to vary the terms of a clear and unambiguous pollution exclusion. Furthermore, in Goodyear Tire RubberCo. v. Aetna Casualty Surety Co., the Ninth Appellate District analyzed and rejected a claim similar to the one made by M M in this case.[17] We agree with the reasoning of the Ninth Appellate District in Goodyear, and we therefore overrule M M's third assignment of error.
 {¶ 29} In its fourth assignment of error, M M contends that the trial court erred in denying as moot its motion to compel complete discovery responses by Continental, Transportation, and Great American. Because we have already concluded, in our disposition of M M's first and second assignments of error, that the trial court properly granted summary judgment to Continental, Transportation, and Great American, and properly denied M M's Civ.R. 56(F) motion and motion to strike the joinder of parties, the trial court's denial of M M's motion to compel *Page 11 
further discovery responses as moot was appropriate. We, therefore, overrule its fourth assignment of error.
 {¶ 30} Our disposition of M M's third assignment of error has likewise mooted Continental, Transportation, and Great American's cross-assignment of error. Having found no merit to any of M M's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
HILDEBRANDT, P. J., SUNDERMANN and DINKELACKER, JJ.
[1] Advanced Analytics Labs v. Kegler Brown Hill Ritter,148 Ohio App.3d 440, 448, 2002-Ohio-3328, 773 N.E.2d 1081; Gates Mills InvestmentCo. v. Pepper Pike (1978), 59 Ohio App.2d 155, 172, 392 N.E.2d 1316;TransAmerica Financial Services v. Stiver (1989), 61 Ohio App.3d 49, 53,572 N.E.2d 149.
[2] Ball v. Hilton Hotels (1972), 32 Ohio App.2d 293, 294-95,290 N.E.2d 859; Carpenter v. Columbus Motor Lodge, Inc. (1990),67 Ohio App.3d 589, 594, 587 N.E.2d 916.
[3] Henson v. Highland Dist. Hosp., 143 Ohio App.3d 699, 706,2001-Ohio-2513, 758 N.E.2d 1166; Manofsky v. Goodyear Tire RubberCo. (1990), 69 Ohio App.3d 663, 668, 591 N.E.2d 752.
[4] Ohayon v. Safeco Ins. Co., 91 Ohio St.3d 474, 2001-Ohio-100,747 N.E.2d 206, paragraph two of the syllabus.
[5] See id. at 477, citing Gries Sports Enterprises, Inc. v.Modell (1984), 15 Ohio St.3d 284, 473 N.E.2d 807, syllabus.
[6] Section 9627, Title 42, U.S.Code; see, also, Gould v. A MBattery Tire Service (C.A.3, 2000), 232 F.3d 162, 170; U.S. v.Mountain Metal Co. (N.D.Ala.2001), 137 F.Supp.2d 1267, 1278-79.
[7] Home Ins. Co. v. St Paul Fire Ins. Co. (C.A.2, 2000), 229 F.3d 56,66.
[8] See Koos v. Central Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 588, 641 N.E.2d 265.
[9] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327,364 N.E.2d 267.
[10] (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096.
[11] See Hybud, supra, at 667 (periodic shipment of wastes "brought the causes of action within the scope of the pollution exclusion").
[12] See U.S. Industries, Inc. v. Ins. Co. of N. America (1996),110 Ohio App.3d 361, 366, 674 N.E.2d 414, 417 (noting policyholder's burden to prove abrupt release once exclusion is triggered); Plasticolors, Inc.v. Cincinnati Ins. Co. (1992), 85 Ohio App.3d 550, 620 N.E.2d 856 (same policyholder burden).
[13] Travelers Cas. Sur. Co. v. Superior Court of Santa ClaraCty. (1998), 63 Cal.App.4th 1440, 1463 ("expected natural phenomena of rain falling upon a landfill and causing migration of contaminants cannot constitute sudden and accidental discharge").
[14] Hybud, supra, at 667 ("[b]oth complaints alleged that over an extended period of time, the insured had either disposed of or accepted a variety of wastes in the landfill"); Employers Ins. of Wausau v.Amcast Industrial Corp. (1998), 126 Ohio App.3d 124, 131, 709 N.E.2d 932
("we cannot construe Amcast's practice of depositing foundry sand at the Goldcamp Disposal Areas as sudden and accidental"); Cravat Coal Co. v.Commercial Union Ins. Co. (Jan. 24, 1997), 7th Dist. No. 95-BA-26 (noting "settled law" applying exclusion to periodic shipments);Borden, Inc. v. Affiliated FM Ins. Co. (S.D.Ohio 1987), 682 F.Supp. 927,930 ("Borden regularly deposited radioactive wastes on its property as part of its production of phosphoric acid * * *. Clearly this is not an allegation of a `sudden and accidental' event. Rather, it is precisely the type of activity which the pollution exclusion was drafted to preclude.").
[15] BP Communications Alaska Inc. v. Cent. Collection Agency (2000),136 Ohio App.3d 808, 810, 737 N.E.2d 1050; see also, Bricklayers, Masonsand Plasterers Internatl. Union v. Stuart Plastering Co., Inc. (C.A.5, 1975), 512 F.2d 1017, 1023 (noting that cross-motions may be indicative of the nonexistence of a factual dispute).
[16] See fn. 14, supra.
[17] (July 12, 1995), 9th Dist. No. 16993. *Page 1