GIANCARLI, APPELLANT, *v.* NATIONWIDE MUTUAL INSURANCE CO. ET AL., APPELLEES.

(No. 10432—Decided May 26, 1982.)

*Mr. Christopher T. Cherpas,* for appellant.

*Mr. Joseph C. McLeland,* for appellees.

MAHONEY, P.J. George Giancarli, plaintiff-appellant, appeals the trial court's judgment granting Nationwide Mutual Insurance Company's motion for a directed verdict on the issue of coverage under Nationwide's Family Major Medical Expense Policy for medical treatment rendered on behalf of Brian Giancarli. We reverse and remand for a new trial.

### Facts

George Giancarli applied for a family major medical policy in 1959 with a local Nationwide agent. He has maintained the same policy and paid the premiums to the present time. The policy covers eighty percent of the medical expenses arising

from accident or sickness up to a maximum of $10,000 for each sickness or accident. There is also a $750 deductible for each separate claim.

Giancarli's son Brian was covered under the policy at issue. In early 1973 Brian was diagnosed with cancer of the type rhabdomyosarcoma which first manifested itself as a large mass on Brian's right shoulder. In February 1973, Brian underwent intensive chemotherapy and radiation treatment at the Cleveland Clinic under the supervision of Dr. Paul Dyment. The course of treatment continued until February 1975 at which time treatment stopped and Brian showed no clinical signs of cancer related to the tumor on his arm. He then experienced a period of remission during which no new evidence of cancer appeared. However, as a result of a chest X-ray on October 14, 1975, Dr. Dyment discovered a small spot indicating a spread or metastasis to the left lung. Again, Brian submitted to chemotherapy and radiation treatment for another two-year period, however, he did not recover and died in October 1980.

Giancarli submitted claim forms for the treatment rendered from February 1973, to February 1975, which were paid. After doctors discovered the metastasis in Brian's lung Giancarli made further medical claims. However, problems arose relating to the documentation and payment was delayed. In March 1977, Nationwide sent Giancarli a check indicating that the three-year benefit period, provided by the policy, ended January 15, 1976. Therefore, no claims for treatment after that date would be paid by Nationwide. Giancarli asserts that Nationwide owes approximately $2,400 in additional coverage beyond the January 15, 1976 date. The trial court directed a verdict in favor of Nationwide holding it liable only for the three-year period from January 12, 1973, until January 11, 1976.

### Assignment of Error

"The trial court erred in sustaining defendant's motion for a directed verdict that sickness by the terms of the policy means one continuing sickness."

The essential issue in this appeal centers on the language of the policy which provided coverage for "any one sickness" up to the policy limits. The expenses for any one sickness must be "* * * incurred while the policy remains in force, within a three-year period * * * beginning with the date charges are first incurred because of sickness." Nationwide contends that the metastasis of the cancer to Brian's lung did not constitute a new sickness but amounted to a continuation of the original disease or sickness. Giancarli argues that Brian's first tumor on his right shoulder was a separate sickness from the subsequent metastasis in his lung which appeared approximately eight months after discontinuing treatment for his shoulder. If we accept Nationwide's approach then only one three-year benefit period would be applicable. Approving appellant's argument would mean that a new three-year benefit period with a new $10,000 maximum began as of October 14, 1975.

Our starting point must be the policy language itself which provides:

"The maximum amount payable because of expenses incurred for *any one sickness* or accident is the amount shown on the first page of this policy under 'Maximum Benefit' * * *." (Emphasis added.)

No definitions of the phrase "any one sickness" or of the word "sickness" appear within the policy. The word "sickness" is a broad term encompassing a wide range of concepts related to an unhealthy condition. See, generally, 80 Corpus Juris Secundum 1277, Sickness; 39 Words and Phrases 331, Sickness; 10 Couch on Insurance 2d 631, Section 41:801 (2d Ed. 1962). We will not attempt to place a specific meaning on the word "sickness" as used in the policy at issue here. Rather, we stress the numerous variations possible and emphasize that absent any limitations or qualifications

within the contract of insurance, the word "sickness" is an ambiguous term.

"A contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language used is doubtful, uncertain or ambiguous. (Paragraph one of the syllabus of *Toms* v. *Hartford Fire Ins. Co.*, 146 Ohio St. 39 [31 O.O. 538], approved and followed.)" *Munchick* v. *Fidelity & Casualty Co.* (1965), 2 Ohio St. 2d 303 [31 O.O.2d 569], paragraph one of the syllabus.

Construing the use of the phrase "any one sickness" liberally in favor of Giancarli, we conclude that a jury could find that Brian's bout with cancer, from February 1973 until February 1975, was a separate sickness, for purposes of the insurance coverage, from the sickness which ensued as a result of the metastasis in his lung in October 1975. In *Standard Life & Accident Ins. Co.* v. *Bethel* (Okla. 1955), 283 P. 2d 531, 532, the Oklahoma Supreme Court found "* * * that if one has been sick from a particular ailment and has recovered therefrom that a later attack from the same malady would be a new sickness under the policy of insurance. * * *

"* * * If the defendant meant to limit the word 'sickness' to the narrow limits it now contends for, it should have done so in the policy."

We find this reasoning persuasive even though several years elapsed between attacks in the *Bethel* case. The remission of eight months, which Brian experienced, is a significant enough break between treatments such that reasonable minds could conclude that the tumor on his left lung initiated a new sickness for purposes of the insurance coverage. This is especially true in light of Dr. Dyment's testimony that during the months from February 1975 to October 1975, Brian displayed no clinical evidence of cancer. Therefore, the Nationwide motion for a directed verdict should have been denied. See *Posin* v. *A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 275 [74 O.O.2d 427].

We note that, as suggested in *Bethel, supra,* Nationwide could have limited the scope of the phrase "any one sickness" in its policy. Compare *Insurance Company of North America* v. *Deposit Guaranty Natl. Bank* (Miss. 1972), 258 So. 2d 798, where coverage was specifically limited to "any one sickness and all recurrences and conditions related thereto."

On retrial the trial court is vested with responsibility to instruct the jury on the meaning of "any one sickness," keeping in mind that an ambiguous policy phrase must be construed liberally in favor of Giancarli. It then becomes a question of fact for the jury to decide whether, under the evidence and the court's instructions, the two manifestations of cancer which Brian experienced were separate sicknesses for purposes of coverage under the major medical policy. Under the current posture of the case it was inappropriate to employ such a limited interpretation of the phrase "any one sickness" and take the case from the jury.

## Summary

We sustain appellant's assignment of error, reverse the trial court judgment, and remand this cause for a new trial.

*Judgment reversed and cause remanded.*

VICTOR and QUILLIN, JJ., concur.