# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01703-COA

**THE CINCINNATI INSURANCE COMPANY**                    **APPELLANT**

**v.**

**JAMES LEROY WILSON AND LISA WILSON**                    **APPELLEES**

DATE OF JUDGMENT:            11/21/2017
TRIAL JUDGE:                 HON. WINSTON L. KIDD
COURT FROM WHICH APPEALED:   HINDS COUNTY CIRCUIT COURT,
                             FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:     STUART ROBINSON JR.
                             RICHARD T. CONRAD III
ATTORNEY FOR APPELLEES:      JOHN HUNTER STEVENS
NATURE OF THE CASE:          CIVIL - INSURANCE
DISPOSITION:                 AFFIRMED - 05/25/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., WESTBROOKS AND SMITH, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.    On September 23, 2006, James Wilson, an employee of Tri-State Brick & Tile Co.

Inc. (Tri-State), was seriously injured on Tri-State's premises while attempting to unclog a

line in an air pollution control system (a "scrubber") manufactured by Bundy Environmental

Technology Inc. (Bundy).  Bundy's insurance carrier, The Cincinnati Insurance Company

(Cincinnati), denied coverage for James's injury, citing an exclusionary clause contained in

Bundy's general commercial liability policy.

¶2.    In 2010, James and Lisa Wilson (the Wilsons) filed a "Complaint for Declaratory

Judgment" in the Hinds County Circuit Court against Bundy and Cincinnati.[1] The sole issue presented in the complaint is whether Bundy's insurance policy provided coverage for James's accident. After a two-day trial, a circuit court jury rendered a verdict for the Wilsons. The circuit court entered its final judgment on November 20, 2017, ordering Cincinnati to provide coverage for the claims under the terms of the policy. Cincinnati filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the court denied.

¶3.     On appeal, Cincinnati requests that this Court reverse and render the judgment, maintaining that James's injury was not covered under the policy. Finding the verdict was supported by the evidence, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶4.     James was employed by Tri-State, a brick manufacturer in Mississippi. Part of the brick manufacturing process involves large kilns baking the bricks with "use of certain chemicals and significant heat in these ovens." James's duties at Tri-State included working with these kilns. Environmental regulations required Tri-State to install air pollution control systems, a/k/a "scrubbers," to get rid of the pollutants caused by the manufacturing process. When Tri-State added a new kiln in 2006, it negotiated with Bundy to purchase a scrubber.

---

[1] The Wilsons have also filed a complaint against Bundy in the United States District Court for the Southern District of Mississippi (Civil Action No. 3:10cv14-HTW-LRA), alleging that the product was defective and unreasonably dangerous. That action was stayed pending resolution of this action. However, Bundy has made no appearance in this action; nor is Bundy a party to this appeal.

2

According to the purchase contract signed in June 2005, Tri-State "opted to supply the field construction (erection, wiring, piping, and field insulation) of the system" in an effort to lower costs, with the agreement that Bundy would "coordinate with Tri-State's contractor and [would] supply field supervision and management as reasonably required throughout the construction period as well as during check-out and start-up."

¶5.     Alkali lime used in the scrubber to eliminate pollutants would occasionally get clogged along the sides of the scrubber; so the machine was typically outfitted with a pneumatic device to shake and unclog the lines.  However, there is no evidence that the pneumatic device had been installed on the scrubber in question on September 23, 2006, the date of James's accident.  For this reason, James used a stepladder to climb up and hit the side of the scrubber with a sledgehammer in an effort to unclog the lines.  In doing so that particular day, a hole opened up, spraying the lime into James's eyes and blinding him.

¶6.     Cincinnati denied coverage for James's injury, citing an exclusion provision for "Products-Completed Operations Hazard" (PCOH) contained in Bundy's policy.  The exclusion states:

"Products-completed operations hazard":

   a.     Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1)   Products that are still in your physical possession; or

      (2)   Work that has not yet been completed or

3

abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed; or

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Cincinnati provided the following explanation for denying coverage in a letter to Bundy dated February 4, 2010:

In this case, Mr. Wilson's injury clearly occurred away from your premises and the Air Pollution Control System was not in your possession. As such, this falls within the PCOH and the PCOH exclusion applies eliminating coverage.

The PCOH definition also includes bodily injury occurring away from your premises that arises out of "your work" unless that work has not been completed or abandoned. First, note that "your work" is different that "your product." A review of the suit against you clearly indicates that Mr. Wilson is suing based upon a defective product, not defective work.

However, even if the suit was based upon defective work, the PCOH states that your work is completed or abandoned when (a) all of the work called for in your contract is completed, (b) all of the work at a single job site is completed even if there are other job sites not yet finished or (c) that part of the work done at a job site has been put to is intended use. In this case, the Air

4

Pollution Control System was installed and put to its intended use when it allegedly injured Mr. Wilson. As such, there is still no coverage, even if the suit was based upon defective work instead of a product.

The Wilsons filed a "Complaint for Declaratory Judgment" on September 22, 2010, seeking a ruling from the circuit court on "whether or not there is insurance coverage within the policy for the allegations of this Plaintiff's initial [c]omplaint to cover his injuries." Responding to the complaint, Cincinnati continued to assert that the exclusion clause precluded coverage for the injury.

¶7.    After extensive discovery, the Wilsons filed a summary-judgment motion on August 17, 2017, claiming "[t]he overwhelming evidence shown in discovery proves unequivocally that the product itself was neither completed, nor put to its[] intended use on or about the date of the accident." Cincinnati filed a response and a motion for summary judgment, in which the insurance company argued that the Wilsons' "reliance on the 'not yet completed' work policy language to afford coverage to Bundy fails because the work in question was complete and being put to its intended use, as evidenced by [James's] own deposition testimony along with other proof developed in discovery." The circuit court denied both motions.

¶8.    A jury trial was held on November 6-8, 2017. During pretrial proceedings, the parties stipulated that the only issue to be decided was whether James's injury was covered under Bundy's insurance policy.[2]

---

[2] For this reason, the parties agreed that evidence related to damages or whether the product was defective would not be introduced at trial.

5

¶9.     Charles McClain, the kiln supervisor at Tri-State when the incident occurred, testified that he was involved in the purchase of the scrubber from Bundy. Although Tri-State was tasked with assembling the scrubber after it was delivered, McClain testified that Bundy "supervised the assembly." He said that the scrubber had been put into use while still under construction, and when asked if the scrubber was completed when James's injury occurred, McClain replied, "No." On cross-examination, McClain disagreed with defense counsel's representation that Bundy's construction was complete as of May 1, 2006, claiming that when he left the company in October 2006, the scrubber still was not completed. With regard to the scrubber's functioning, he noted that "[i]f the lime builds up too much in there, the scrubber will not function properly."

¶10.    In his testimony, James recalled seeing Bundy employees working on the scrubber around the time of his accident. Although James had no official training on operating the scrubber, he had noted on the day of the incident "that [the scrubber] was all stopped up"; so he stood on a stepladder and hit the side with a sledgehammer to clear the line, as "[t]here was no shaker to knock the line down." James later testified that he had unclogged the scrubber a few times in that same manner before the incident.

¶11.    When asked his opinion on whether the scrubber was working as intended, James stated, "No, we constantly had problems out of it. They w[ere] there even working on it." James admitted on cross-examination that the scrubber was in operation, but he also said "they w[ere] still getting all of the kinks out of it." On redirect, James said that prior to his

accident, one of Bundy's independent contractors had gotten "sprayed so bad," he had to be taken for a shower.

¶12. Counsel for Cincinnati moved for a directed verdict, arguing the Wilsons had failed to provide evidence "that the product was not put to its intended use or was not complete at the time [of] or before [James's] accident." The court denied the motion. Donald Corwin, an engineer testifying for the defendant, was accepted as an expert in the areas of air pollution combustion systems and incineration, as well as safety compliance, design, project management, and contract compliance for brick manufacturing. Corwin testified that Tri-State was given the components for the scrubber by Bundy "to be assembled on site." He opined that the scrubber was put into service on May 24, 2006, because that is when production of the bricks in the new kiln started, and he averred that "the system was complete and operating as expected." With regard to the other witnesses' testimony that the scrubber was still having issues, Corwin said "minor tweaking . . . occurs always"; so he "totally agree[d]" with James's testimony that there were "kinks."

¶13. On cross-examination, however, Corwin admitted that he "did not have direct knowledge" whether the pneumatic shakers shipped for assembly were installed when the incident occurred. He also agreed, "[t]o a reasonable extent," that the purchase order contract between Bundy and Tri-State meant "that Bundy was charged with[,] under that contract[,] overseeing the process of Tri-State Brick erecting that scrubber."

¶14. After the jury rendered a verdict in favor of the Wilsons, the circuit court entered its

7

final judgment concluding that the policy provided coverage for the claims asserted in the Wilsons' complaint. The court subsequently denied Cincinnati's posttrial motion for a JNOV. Appealing the judgment, Cincinnati asserts individual assignments of error to support its central claim that the jury's verdict was against the sufficiency and weight of the evidence. Specifically, Cincinnati raises issues concerning choice of law, burden of proof, and the circuit court's allowing specific jury instructions and witnesses' testimony.

## STANDARD OF REVIEW

¶15. A de novo standard of review is applied "to questions of law, including a motion for a declaratory judgment." *S.C. Ins. Co. v. Keymon,* 974 So. 2d 226, 229 (¶9) (Miss. 2008). Rule 57 of the Mississippi Rules of Civil Procedure "provides for declaratory judgment to determine questions of contractual validity and interpretation." *Wood v. Safeway Ins. Co.*, 114 So. 3d 714, 717 n.2 (Miss. 2013). Rule 57 states in relevant part that "[a]ny person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder." M.R.C.P. 57(b)(1).

## DISCUSSION

¶16. Cincinnati contends that James's injuries fell under the exclusionary PCOH clause in the policy because his "alleged injuries clearly occurred away from Bundy's Reynoldsburg, Ohio premises, and the scrubber was not in Bundy's possession at the time of the alleged accident." Cincinnati further argues that "[t]he scrubber and/or the work had been put to its

8

intended use prior to when it allegedly injured [James]."[3] Thus, the insurance company claims that it "is entitled to a judgment finding there is not coverage" and requests that the Court reverse and render judgment in its favor.

*I. Choice of Law*

¶17.   Cincinnati's first assignment of error is that "Ohio law is properly applied to the issues in this case." This argument was raised in Cincinnati's motion for summary judgment, which the court denied. At trial, however, the only instance where Cincinnati asserted this claim was with regard to Jury Instruction P-6, which stated:

> The Court instructs the jury that if a policy of insurance is reasonably open to two different interpretations, the interpretation that is more favorable to providing insurance coverage is favored. This means if there is any reasonable doubt as to whether or not the policy is subject to two interpretations, that which favors providing the coverage is applicable.

Counsel for Cincinnati objected to the proposed instruction, arguing that "no *Ohio* case says that that language [in the policy] is ambiguous" and that "even if it was ambiguous[,] that would be a question for the court to decide," not the jury. (Emphasis added). After further consideration, the court decided to grant the instruction. Cincinnati reiterates on appeal that by applying Ohio law in the present case, "the question of whether there was coverage" was

---

[3] We note that the terms "product" and "work" have been, at times during the court proceedings, conflated by the parties. As Cincinnati stated in its letter denying coverage for the accident, the exclusion provision clearly stated that it was whether "your work" had "not been completed or abandoned[;] . . . 'your work' is different tha[n] 'your product.'" Nevertheless, we do not find that this conflation of terms warrants reversal of the verdict in this case; nor have the parties made such argument on appeal.

a question of law to be decided by the court.[4]

¶18.    As Cincinnati recognizes in its brief, Mississippi relies "on the 'center of gravity' doctrine of the Restatement" to determine which state's law is applicable. *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 433 (¶10) (Miss. 2006) (citing *Mitchell v. Craft*, 211 So. 2d 509, 510 (Miss. 1968)).  In utilizing the "center of gravity" test, a court considers the following elements:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Id*. at 435 (¶17) (citing Restatement (Second) of Conflict of Laws § 188(2)-(3) (1971)). Here, the policy was negotiated and executed in the state of Ohio, where Bundy's business is incorporated.  The "product," i.e., the scrubber, was manufactured in Ohio; the "work," i.e., the assembly and installation, occurred in Mississippi.  James's injury also occurred in Mississippi, where he lived and worked.

¶19.    Nevertheless, "[c]hoice of law analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation." *Id*. at 432 (¶8).  As the Wilsons accurately note in their brief, both Ohio and Mississippi law provide that if there is ambiguity in an insurance policy, it should be resolved in favor of coverage.  The

---

[4] Cincinnati concedes that Mississippi law governs the underlying district court case with regard to claims of product liability and negligence.

10

Mississippi Supreme Court has held, "Any ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage." *Nationwide Mut. Ins. Co. v. Garriga*, 636 So. 2d 658, 662 (Miss. 1994); *see also Keymon*, 974 So. 2d at 230 (¶12) ("Ambiguous terms in an insurance contract are to be construed most strongly against the preparer, the insurance company." (citing *U.S. Fid. & Guar. Co. v. Omnibank*, 812 So. 2d 196, 198 (¶19) (Miss. 2002))). Likewise, the Ohio Supreme Court has recognized, "Ambiguity in the policy language is construed against the insurer and liberally in favor of the insured, particularly when the ambiguity exists in a provision that purports to limit or qualify coverage under the insurance policy." *World Harvest Church v. Grange Mut. Cas. Co.*, 68 N.E.3d 738, 745 (¶29) (Ohio 2016) (citation omitted); *see also Westfall v. Dlesk*, 46 N.E.3d 124, 128 (¶23) (Ohio Ct. App. 2015) ("Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.").

¶20.    We also find no conflict between Ohio and Mississippi law with regard to the interpretation of the insurance contract. Cincinnati cites *Leber v. Smith*, 639 N.E.2d 1159, 1163 (Ohio 1994), which held, "The interpretation of an insurance contract involves a question of law to be decided by a judge." In Mississippi, our supreme court has also held that "[t]he interpretation of insurance policy language is a question of law." *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (¶12) (Miss. 1998) (citing *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So. 2d 866, 871 (Miss. 1995)). Therefore, we find there was no "true conflict"

11

requiring a choice-of-law analysis.

¶21.    We reject, however, Cincinnati's implication that the issue of coverage under the policy strictly involved an issue of law.  Rather, we find that the determination of whether the work had been completed and the injury covered as an exception to the policy's exclusionary clause involved a question of fact for a jury's consideration.  *See Martin v. Homesite Grp. Inc.*, No. 3:06CV536-DPJ-JCS, 2008 WL 4000182, at *2 (S.D. Miss. Aug. 20, 2008) (finding that whether "rafters were defectively constructed and therefore implicate[d]" an exclusion to the homeowner's insurance policy "present[ed] a question of fact for the jury"); *Canal Ins. Co. v. Howell*, 253 Miss. 225, 233, 175 So. 2d 517, 521 (1965) (holding that whether a loss fell under an exclusion to an insurance policy was "a question of fact . . . for the jury to determine"); *Giancarli v. Nationwide Mut. Ins. Co.*, 449 N.E.2d 517, 519 (Ohio Ct. App. 1982) (holding that it was a "question of fact for the jury to decide whether . . . the two manifestations of cancer [experienced by the insured] were separate sicknesses for purposes of coverage under the [insurance] policy").

¶22.    Accordingly, we find the "choice-of-law" issue not dispositive to the case before us.

        II.     *Burden of Proof / Jury Instruction P-7*

¶23.    Cincinnati contends that the Wilsons bore the burden of establishing that James's injury fit "within the 'incomplete work exception' to the PCOH exclusion."  We find the caselaw from both Ohio and Mississippi support Cincinnati's argument.  The United States Court of Appeals for the Fifth Circuit has held that under Mississippi law, "[i]f the insurer

12

shows an exclusion applies, the burden shifts back to the insured to show that there is an

exception to the exclusion." *State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols. LLC*, 751

F.3d 684, 693 (5th Cir. 2014) (quoting *Ass'n Cas. Ins. Co. v. Major Mart Inc.*, No.

1:12CV022-SA-DAS, 2013 WL 3409217, at \*2 (N.D. Miss. July 8, 2013)); *see also U.S. Fid.*

*& Guar. Co. v. B & B Oil Well Serv. Inc.*, 910 F. Supp. 1172, 1181 (S.D. Miss. 1995)

(recognizing "most courts have held that the burden is on the insured to prove" an exception

to a policy's exclusion applies); *LM Ins. Corp. v. Szuhay*, 222 F. Supp. 3d 558, 565 (N.D.

Ohio 2016) ("Once the insurer establishes that an exclusion is applicable, the burden shifts

back to the insured to establish the applicability of an exception to the exclusion." (citation

omitted)); *Plasticolors Inc. v. Cincinnati Ins. Co.*, 550, 620 N.E.2d 856, 858 (Ohio Ct. App.

1992) (holding that the *insured* had failed to meet its burden "to establish that the exception

to [a] pollution exclusion" in the policy was "applicable").

¶24.    However, although Cincinnati made this claim in the motion for summary judgment,

it did not raise this specific argument at trial.  In fact, the only time Cincinnati asserted a

burden-of-proof issue at trial was when defense counsel objected to Jury Instruction P-7,

which instructed the jury as follows:

> The Court instructs the jury that the issue in this case revolves around whether
> or not an exclusion of coverage under the policy would prevent the insurance
> coverage from being applicable to the Plaintiff's accident and injuries.  In this
> case, if the insurance carrier is arguing that but for the "products completed
> operation hazard" exclusion, the policy would provide coverage, *the burden
> of proof is on the insurance carrier to prove the exclusion is applicable*.

(Emphasis added).  Defense counsel argued, "[W]e still object to the shifting the burden of

proof to us, Your Honor. We think the plaintiff has the burden of proof. This is his declaratory judgment action. We don't think entry the burden to -- I don't think the burden shifts to us." The court granted the proposed instruction. Represented by new counsel on appeal, Cincinnati claims that the instruction "erroneously shifted the burden to Cincinnati" to prove coverage.

¶25. First, Cincinnati fails to recognize that Jury Instruction P-7 only addressed which party (the insurer) has the burden of proof "to prove the exclusion is applicable." The issue of who bears the burden to prove whether *an exception to the exclusion has been established* was never argued at trial. Nor does the record show that Cincinnati submitted any proposed jury instruction that the burden of proof should shift back to the plaintiff to prove an exception to the exclusion. Therefore, we cannot find error on an issue not presented to the trial court for a ruling. *See Span ex rel. Span v. Nichols*, 306 So. 3d 781, 788 (¶25) (Miss. Ct. App. 2020) ("[A] trial judge cannot be put in error on a matter which was never presented to him for decision." (quoting *Methodist Hosps. of Memphis v. Guardianship of Marsh*, 518 So. 2d 1227, 1228 (Miss. 1988))).

¶26. Second, with regard to Jury Instruction P-7, the supreme court has held that when reviewing a claim of error involving a trial court's giving or refusing of jury instructions, we are to "consider all of the jury instructions together as a whole." *Richardson v. Norfolk S. Ry. Co.*, 923 So. 2d 1002, 1010 (¶19) (Miss. 2006) (citation omitted). "If all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law,

14

no error results." *U. Am. Ins. Co. v. Merrill*, 978 So. 2d 613, 628 (¶78) (Miss. 2007) (quoting *Milano v. State*, 790 So. 2d 179, 185 (¶14) (Miss. 2001)).

¶27.    In *Hoover v. United Services Automobile Ass'n*, 125 So. 3d 636, 641-42 (¶¶11, 15) (Miss. 2013), our supreme court expressly rejected an insurance company's argument that once it had "met its burden of proof through documents, its own investigation, and the cross examination of [a witness]," the burden of proof shifted back to the insured to prove coverage, holding:

> The trial court's finding that the Hoovers "should have put on something to show that it was other than surge" was erroneous and in conflict with this Court's prior decisions[.] . . . USAA bears the burden to prove, by a preponderance of the evidence, that the loss was caused by, or concurrently contributed to, by an excluded peril. This issue of fact is one for the jury, and the burden of proof does not shift to the Hoovers.

"[I]nsuring clauses are [to be] construed broadly to effect coverage, and exclusionary clauses that restrict coverage are construed narrowly against the insurer." *Canal Ins. Co. v. T.L. James & Co.*, 911 F. Supp. 225, 228 (S.D. Miss. 1995) (citing *Garriga*, 636 So. 2d at 658). "So, to benefit from an exclusionary provision in an insurance contract, *the insurer must show that the exclusion applies* and that it is not subject to any other reasonable interpretation that would afford coverage." *Id*. (emphasis added). Even the Mississippi federal case cited by Cincinnati recognized that "the general rule is that the insurer bears the burden of proof *on the applicability of exclusionary provisions*[.]" *U.S. Fid. & Guar. Co.*, 910 F. Supp. at 1181 (emphasis added). Accordingly, because the jury instruction correctly stated the applicable law, we conclude that the circuit court did not err in granting Jury Instruction P-7.

15

### III. Lay Opinion Testimony

¶28. Lastly, Cincinnati argues that the circuit court's allowing McClain and James to testify that the scrubber was not completed at the time of the accident "was improper and . . . grounds for reversal[,]" as neither were qualified as experts. At trial, when asked if the scrubber was "functioning as it was intended to function pursuant to the proposal," McClain replied, "No, it was not." Defense counsel objected because McClain was "a lay witness" and "because it's irrelevant." Overruling the objection, the trial court let counsel for the plaintiffs "lay the foundation" for the testimony. McClain testified that he was in charge of making sure the scrubber worked properly and was constructed and completed. He further averred that the scrubber was not completed in accordance with the contract's terms. Defense counsel reiterated its objection, which the court overruled. Defense counsel also objected when James was asked to testify whether the scrubber was working as intended and completed.

¶29. The Wilsons respond that the witnesses' testimony was admissible as opinion testimony by lay witnesses. Mississippi Rule of Evidence 701 provides that opinion testimony by a lay witness is limited to one that is "(a) rationally based on the witness's perception; (b) helpful to clearly understand the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The Advisory Committee Note to Rule 701 further states that the rule "favors the admission of lay opinions when two considerations are met": (1) first-hand

16

knowledge or observation by the witness; and (2) the "witness's opinion must be helpful in resolving the issues." M.R.E. 701 advisory committee note.

¶30. In this case, both witnesses testified with respect to whether the scrubber's assembly was completed when the accident happened—the central issue to be resolved at trial. Both McClain and James testified as to their first-hand knowledge of the scrubber's utilization at the time of the incident. McClain also averred that he was involved in the negotiations with Bundy and was familiar with the terms of the purchase contract. Thus, we find no error in the court's allowing McClain's and James's opinion testimony as lay witnesses.

## CONCLUSION

¶31. Finding that the errors alleged by Cincinnati are without merit and that the verdict is supported by the evidence, we affirm the judgment.

¶32. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

17